**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-41317

---

COBURN SUPPLY COMPANY INC

            Plaintiff-Appellee

v.

KOHLER CO

            Defendant-Appellant

---

Appeal from the United States District Court
for the Eastern District of Texas

---

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit Judges.

KING, Chief Judge:

This case involves the alleged wrongful termination of an at-will, non-exclusive wholesale distributor of plumbing products. Consistent with the jury's verdict, the district court entered judgment in favor of the at-will distributor on its breach of contract and negligent misrepresentation claims and denied the defendant's renewed motion for judgment as a matter of law. We reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Facts

The defendant, Kohler Co. ("Kohler"), manufactures and sells plumbing products to contractors and end users through a nation-

wide network of non-exclusive independent distributors. The plaintiff, Coburn Supply Company, Inc. ("Coburn"), is a wholesale distributor of plumbing, electrical, and HVAC products, with locations throughout Louisiana and East Texas. Coburn was a non-exclusive, at-will distributor of Kohler's products from 1938 through 1999.

While no single written or oral contract controlled the terms by which the distributor relationship was governed, certain obligations of each party were defined by written and oral communications between the companies and through their course of dealing over the years. For example, Coburn and Kohler met each year to discuss account plans and goals for the coming year – which were memorialized in an "annual agreement."[1] Further, certain terms that governed the relationship were set forth in letters sent by Kohler to Coburn. In most instances, these were form letters sent to all of Kohler's distributors. These terms set forth general obligations that Kohler distributors were required to meet to continue on as a Kohler distributor, such as: the requirement that distributors purchase a minimum of $500,000 of Kohler plumbing products annually; the requirement that distributors not sell certain competing products; the requirement that distributors commit a sales force properly trained in Kohler products; and the requirement that distributors promote and advertise Kohler products. The letters, as well as oral communications between the

---

[1] These annual agreements were not signed by either party.

2

parties, also set forth certain benefits Kohler distributors were entitled to receive from Kohler, including: access to Kohler's Rebate Growth Program (which provided financial rewards for a distributor's successful sales); funds for showroom development and advertising; consumer referrals; promotional products; training programs for sales staff; and financial and logistical assistance with product returns and warranty issues. It is undisputed, however, that no contractual term required Kohler to provide notification to Coburn, or any of its other distributors, before terminating the distributor relationship.

On September 17, 1999, following a sixty-year distributorship relationship, Kohler gave notice to Coburn that effective December 31, 1999, it would terminate Coburn as a distributor of Kohler products. From this time, Coburn was thus provided with 105 days' notice of the termination. Coburn began negotiating with American Standard, one of Kohler's three major competitors, within days of this notice of termination, and Coburn was doing business with American Standard approximately two months before the relationship between Coburn and Kohler was terminated. Coburn and American Standard publicly announced their new union in November 1999. However, Coburn continued to order Kohler products on an open account through the end of 1999 and, indeed, bought and sold Kohler products during the first quarter of 2000.[2]

---

[2] In the parties' proposed joint pre-trial order, the parties further stipulate that "[a]s of October 1, 2001, Plaintiff continues to sell Defendant's products."

3

## B.    Procedural History

Coburn sued, claiming Kohler breached its obligation to Coburn to provide reasonable notice before terminating the relationship and that Kohler made negligent misrepresentations to Coburn regarding the stability of the distributor relationship. A five-day trial was held. During the trial, the district court denied Kohler's motions for judgment as a matter of law and, alternatively, for mistrial made after Coburn's case in chief and, again, before the district court presented the charge to the jury.

The jury thereafter found in favor of Coburn on its breach of contract and negligent misrepresentation claims. The jury found that Kohler breached a "contract or obligation to Coburn in the manner Kohler terminated its distributorship agreement with Coburn." The jury specifically entered the figure -0- as the sum of money necessary to compensate Coburn fairly and reasonably for the loss of profits it incurred following the termination of the relationship, but nevertheless found $1,801,153 in damages proximately caused by Kohler's conduct, not including lost profits.

On July 3, 2002, the district court entered final judgment consistent with this verdict and awarded aggregate damages totaling $2,616,039.18 – including pre-judgment interest calculated at an annual rate of 10% (totaling $419,941.72), attorneys' fees on the plaintiffs' breach of contract claim (totaling $360,773.75), and costs of court (totaling $34,170.71). On August 6, 2002, the court denied Kohler's renewed Rule 50 motion for judgment after trial or, in the alternative, Rule 59 motion for new trial. Kohler appeals

4

from the July 3, 2002 final judgment and from the August 6, 2002 entry of the district court's denial of Kohler's Rule 50 motion.

## II. DISCUSSION

## A. Breach of Contract

Both parties spend a good portion of their briefing debating whether the termination was, as Coburn contends, a "surprise" because Kohler had led Coburn to believe that it was performing satisfactorily before "suddenly" giving Coburn notice of its intent to terminate the relationship or, as Kohler maintains, a natural outgrowth of differing market philosophies between the two companies. However, all parties agree that the distributor relationship was an at-will relationship and Coburn was a non-exclusive distributor of Kohler's products. Thus, Kohler's rationalization for its decision to terminate Coburn simply has no bearing on the outcome of this case. Texas law has never required a party to demonstrate cause before terminating an at-will, non-exclusive relationship. See, e.g., Fed. Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993) (discussing the parameters of the at-will doctrine in Texas); see also Corenswet Inc. v. Amana Referigeration, 594 F.2d 129, 138 (5th Cir. 1979) ("We seriously doubt [] that public policy frowns on any and all contract clauses permitting termination without cause . . . Indeed, when, as here, the power of unilateral termination without cause is granted to both parties, the clause gives the distributor an easy way to cut the knot should he be presented with an opportunity to secure a better distributorship from another manufacturer."); W. G.

5

Pettigrew Distrib. Co. v. Borden, Inc., 976 F. Supp. 1043, 1054 (S.D. Tex. 1996) ("The longstanding rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary."); Perez v. Vinnell Corp., 763 F. Supp. 199, 200 (S.D. Tex. 1991) (stating that a party may terminate an at-will relationship in Texas for a good reason, a bad reason, or no reason at all).

This is not to say that the manner in which Kohler terminated the relationship cannot give rise to breach of contract damages. Here, Coburn's breach of contract claim is based on whether the 105-day notice given by Kohler to Coburn constitutes a breach of an implied obligation to provide reasonable notice.

*(1) Implied Term of Reasonable Notice*

No contractual term expressly controls the issue of notice here. Before analyzing whether there is sufficient evidence to support the jury's finding that the 105-day notice here is not reasonable, we thus must first address whether the notice issue is controlled by Texas common law or § 2.309(3) of the Uniform Commercial Code ("UCC"), codified as § 2.309(c) of the Texas Business & Commerce Code.

In Texas, distributorship agreements are generally controlled by the UCC. See, e.g., Glenn Thurman, Inc. v. Moore Const., Inc., 942 S.W.2d 768, 771 (Tex. App. – Tyler 1997) ("When parties enter into a contract for the sale of goods, [the UCC] controls the conduct of the parties. Where the U.C.C. applies, it displaces all common law rules of law regarding breach of contract and

substitutes instead those rules of law and procedure set forth in the U.C.C."); see also Continental Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 788 (Tex. App. – Houston [14th Dist.] 2001, no pet.) (joining "the overwhelming majority of jurisdictions . . . [in holding] that distributorship agreements are subject to the UCC"). In Coburn's response to Kohler's motions for summary judgment and in its response to Kohler's motions for judgment as a matter of law (but not in its complaint, amended complaint or in the proposed joint pre-trial order), Coburn argued that, consistent with this case law, the UCC's "gap filler" provisions should be interpreted to imply a term of "reasonable" notice here.  In contrast, Kohler maintained that in the absence of an express contractual term controlling notice, Texas common law should be looked to in determining whether to imply a term of "reasonable" notice.

On June 26, 2002, the district court allowed Coburn to amend its pleadings and file its second supplemental complaint, nunc pro tunc as of April 5, 2002 (the day of the jury verdict), to assert that its breach of contract claim for lack of reasonable notice of termination is based on § 2.309(c).  Kohler argues that in so doing, the district court abused its discretion. See Prudhomme v. Tenneco Oil Co., 955 F.2d 390, 392 (5th Cir. 1992) (holding that a district court's grant of a late motion to file supplemental amended pleadings is reviewed for an abuse of discretion).

We assume for the sake of this appeal that the district court did not abuse its discretion in granting Coburn leave to file its second supplemental complaint.  We thus look to § 2.309(c) for

7

guidance on the reasonable notice issue.

As stated, Texas has adopted the UCC, which governs contracts for the sale of goods. Texas Business & Commerce Code § 2.309(c) provides that:

> Termination of a contract by one party except on the happening of an agreed event <u>requires that reasonable notification be received</u> by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

(emphasis added). Thus, under this provision, even though the distributor relationship between Coburn and Kohler was an at-will relationship, Kohler was required to provide Coburn with reasonable notice before terminating the distributor relationship.

*(2) Insufficiency of the Evidence*

Kohler's challenge to the legal sufficiency of the evidence in support of the jury's finding that the 105-day notice is not reasonable is reviewed under an "especially deferential" standard, and the relevant question is whether, "consider[ing] the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to [Coburn] . . . no reasonable jury could have arrived at [the conclusion that 105 days was not reasonable notice]." <u>Miss. Chem. Corp. v. Dresser-Rand Co.</u>, 287 F.3d 359, 365 (5th Cir. 2002).

While no Texas case squarely addresses the issue of reasonable notification in the sale of goods context, the cases on this issue outside of our jurisdiction uniformly hold, even in the context of an exclusive distributor relationship rather than – as here – a

8

non-exclusive distributor relationship, that reasonable notification calls for such notification as will give the other party reasonable time to seek a substitute agreement. See, e.g., Serpa Corp. v. McWane Inc., 199 F.3d 6, 8-9 (1st Cir. 1999) (following Teitelbaum (discussed below) in finding that in terminating its exclusive twenty-year distributorship relationship with the plaintiff, thirty days was reasonable notice because the "reasonableness of notice 'is measured in terms of the ability of the party affected by the termination to obtain a substitute arrangement'"); Teitelbaum v. Hallmark Cards, Inc., 520 N.E.2d 1333, 1335 (Mass. App. 1988) (holding that Hallmark's 60-day notice before terminating its exclusive relationship with its distributor was reasonable, as a matter of law, where the evidence was undisputed that the card shop obtained another supplier (American Greeting Card Company) before it reopened after fire damage).

This interpretation accords with the text of the comments to § 2.309. Comment 8 to Texas Business & Commerce Code § 2.309 provides that:

> Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute agreement. An agreement dispensing with notification or limiting the time for the seeking of a substitute agreement is, of course, valid under this subsection unless the results of putting it into operation would be the creation of an unconscionable state of affairs.

TEX. BUS. & COM. CODE ANN. § 2.309, cmt. 8 (emphasis added).

9

Additionally, comment 6 states that "[p]arties to a contract are not required in giving reasonable notification to fix, at peril of breach, a time which is in fact reasonable in the unforeseeable judgment of a later trier of fact." Id. § 2.309, cmt. 6.

Absent an express contractual provision governing notice of termination, we see no reason to depart from the comments to the controlling UCC provision and persuasive case law following these comments. Here, it is undisputed that Kohler provided Coburn with 105 days' notice before terminating the distributor relationship. Coburn obtained a new primary supplier – American Standard – within approximately six weeks of the time it received notice of termination from Kohler and approximately two months before the scheduled termination date of December 31, 1999. Indeed, it began discussions with American Standard days after being given notice by Kohler, but still continued to buy Kohler products on credit into 2000. In these circumstances, we hold that no reasonable jury could have arrived at the conclusion that the 105 days' notice here is unreasonable.

As the district court clearly grounded the award of attorneys' fees in this case to Coburn's success on its breach of contract claim, we further hold that the award of attorneys' fees to Coburn as the prevailing party on its contract claim cannot stand. See Stine v. Marathon Oil Co., 976 F.2d 254, 264 (5th Cir. 1992) (stating that, when tort and contract claims are tried together, "Texas law requires the attorney's fee be limited to a contract award, it does not permit an award of attorney's fees for tort

10

claims").

**B.   Negligent Misrepresentation**

The jury also found that Kohler made negligent misrepresentations on which Coburn justifiably relied.  Because Texas law does not recognize a duty to avoid negligent misrepresentations arising from an arms-length, at-will relationship, we further reverse the district court's judgment in favor of Coburn on Coburn's negligent misrepresentation claim.

To succeed on its negligent misrepresentation claim under Texas law, Coburn is required to prove that: (1) without exercising reasonable care or competence in communicating information to Coburn; (2) Kohler supplied "false information" for the guidance of Coburn; (3) in the course of its business; (4) which caused Coburn to suffer a pecuniary loss by justifiably relying on the information.  Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).  Here, Coburn argued that despite negotiating with a replacement distributor outfit as early as 1997, Kohler failed to communicate to Coburn its plans to terminate the Kohler-Coburn distributor relationship.  However, in Texas, non-disclosures cannot be negligent unless there is a duty to disclose.  Fleming v. Tex. Coastal Bank of Pasadena, 67 S.W.3d 459, 461 (Tex. App. – Houston [14th Dist.] 2002, pet. denied); Steptoe v. True, 38 S.W.3d 213, 219-20 (Tex. App. – Houston [14th Dist.] 2001, no pet.) (Holding that "[i]n order to prove negligent misrepresentation, [the plaintiff] must, as a threshold matter, prove that [the defendant] owed her a duty).

11

As a matter of law, the at-will, non-exclusive distributor relationship between Coburn and Kohler is not the kind of confidential or fiduciary relationship that would give Kohler a duty to disclose to Coburn its negotiations with another distributor or its plans to terminate the at-will, non-exclusive distributor relationship. See Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001) (discussing the Restatement (Second) of Torts § 551's recognition of a duty of disclosure in a commercial setting and stating that "[w]e have never adopted section 551" because in Texas, "as a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose information"); Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997) ("[M]ere subjective trust does not, as a matter of law, transform arm's length dealing into a fiduciary relationship.").

Coburn points to a statement by Rick Reles, Kohler's Vice President of Sales, in support of its claim that Kohler made an affirmative misrepresentation upon which Coburn justifiably relied. Assuming, without deciding, that such a misrepresentation could give rise to a duty under Texas law, we find no evidence which supports the jury's finding of justifiable reliance. Indeed, the record is replete with evidence that Coburn management was fully aware of Kohler's plan in 1999 to review all distributors to find out whether it was "positioned with the right horse." See Wright's v. Red River Fed. Credit Union, 71 S.W.3d 916, 921 (Tex. App. - Texarkana 2002, no pet.) (finding that where the only evidence of

12

justifiable reliance is negated by the plaintiff's own testimony, a negligent misrepresentation claim fails).

#### IV. CONCLUSION

We REVERSE the judgment in favor of Coburn and RENDER judgment that Coburn take nothing.