United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 24, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 8, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-50531

_____


UNITED TEACHER ASSOCIATES INSURANCE CO

                    Plaintiff - Appellant

v.

UNION LABOR LIFE INSURANCE COMPANY; UNION STANDARD OF AMERICA LIFE
INSURANCE CO

                    Defendants - Appellees

_____

_____

No. 04-50852

_____



UNITED TEACHER ASSOCIATES INSURANCE CO

                    Plaintiff - Counter Defendant - Appellees

v.

UNION LABOR LIFE INSURANCE COMPANY; UNION STANDARD OF AMERICA LIFE
INSURANCE CO

                    Defendants - Counter Claimants - Appellants

_____

          Appeals from the United States District Court
            for the Western District of Texas, Austin

_____

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit
Judges.

KING, Chief Judge:

Plaintiff-Appellant United Teacher Associates Insurance Company sued Defendants-Appellees Union Labor Life Insurance Company and Union Standard of America Life Insurance Company for fraud, alleging that they failed to disclose material information during the course of a business transaction. The Defendants-Appellees responded by filing a counterclaim seeking both a declaration that certain acquisition agreements between the parties were valid and binding and an order of specific performance and injunctive relief. After a bench trial, the district court ruled in favor of the Defendants-Appellees, granted the relief requested in their counterclaim, and awarded them costs. Subsequently, however, the district court denied a motion for further relief pursuant to 28 U.S.C. § 2202 filed by them.

Plaintiff-Appellant United Teacher Life Insurance Company now appeals the judgment of the district court, claiming that the district court erred by: (1) holding that no duty to disclose exists in Texas absent a confidential or fiduciary relationship; (2) refusing to certify to the Texas Supreme Court the question of when a duty to disclose exists in Texas; and (3) improperly awarding certain costs to the Defendants-Appellees. Union Labor Life Insurance Company and Union Standard of America Life Insurance Company also appeal, arguing that the district court erred when it denied their motion for further relief. The parties' appeals have been consolidated. For the following

2

reasons, we AFFIRM in part, VACATE in part, and REMAND to the district court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 1999, Union Labor Life Insurance Company ("Union Labor") and its subsidiary, Union Standard of America Life Insurance Company ("USA Life") (collectively "Union/USA"), agreed to sell their Medicare Supplement and Medicare Select insurance policies (the "Medicare Block") to United Teacher Associates Insurance Company ("United Teacher").

Prior to putting the Medicare Block up for sale, Union/USA had entered into two consent orders with the Florida Department of Insurance ("FDI") that restricted future premium rate increases on the Medicare Block. First, on May 27, 1997, Union/USA entered into a consent order restricting premium rate increases to trend on the Florida Medicare Select policies for a two-year period, followed by a reevaluation of the anticipated lifetime loss ratio at the end of this period.[1] Second, on June 18, 1999, Union/USA entered into a consent order with the FDI that allowed for a 12% premium rate increase on the Medicare Supplement policies in force prior to the effective date of the

---

[1] "Trend" increases are increases based solely on the growth in claims from year to year because of medical inflation, the increased utilization of medical services, and general inflation. They do not take into account the actual experience of a line of business.

3

consent order, but restricted future increases to trend unless Union Labor had "credible experience" on new issues.[2] According to United Teacher, the 1997 and 1999 consent orders significantly affected the profitability of the Medicare Select and Medicare Supplement policies.

After Union Labor put the Medicare Block up for sale,[3] it assembled a due diligence team, led by Union Labor associate actuary Jennifer Lazio, to respond to requests for information from prospective purchasers. When Larry Doze, the president of United Teacher, learned that the Medicare Block was up for bid through a broker, he requested information about it. Lazio responded by sending him the 1998 rate-filing information for the Medicare Supplement policies and an actuarial memorandum about the Medicare Select policies. Lazio did not, however, mention the consent orders. Doze subsequently requested, as part of his due diligence investigation, other documents and information to assess the profitability of the Medicare Block. He did not specifically request information about consent orders or impediments to future rate increases, and he received no such

---

[2]     In Florida, an insurer must issue at least 500 new policies to get "partial credibility," and at least 2,000 new policies to get "full credibility," in order to obtain future rate increases based on the actual experience of a line of business.

[3]     Union Labor was authorized to act as agent for USA Life in connection with the sale and transfer of the USA Life Medicare Supplement lines of business included in the Medicare Block.

4

information.  United Teacher also conducted an on-site visit to the offices of Union Labor's third-party administrator, the American Insurance Administration Group ("AIAG"), but did not learn of the consent orders from this visit.  At one point in the negotiations, Lazio told Doze that the FDI had recently approved a 12% increase in the Medicare Supplement premiums and an 8% increase in the Medicare Select premiums, but she did not tell him that these increases were pursuant to the consent orders.  United Teacher now claims that Union/USA was fraudulently hiding the consent orders from it.

In November 1999, United Teacher decided to purchase the Medicare Block, and it entered into a letter agreement to that effect with Union/USA, with a formal written agreement to follow.  In August 2000, United Teacher decided not to follow through with the purchase.  Accordingly, on December 6, 2000, Union/USA sued United Teacher in the U.S. District Court for the District of Columbia for relief arising out of United Teacher's failure to consummate the transaction.  On October 4, 2001, the parties settled the litigation, and Union/USA agreed to pay United Teacher $2.5 million for United Teacher to acquire the Medicare Block from it.  At the time of settlement, United Teacher still did not know about the consent orders.

During the settlement negotiations, United Teacher concluded that it would need to seek rate increases aggressively on the Medicare Block to make it profitable.  Accordingly, it asked

5

Union/USA to permit it to do the 2001 rate increase filings for the various states that required them. Union/USA agreed, but it suggested that it (Union Labor) handle the rate filings for the state of Florida. United Teacher agreed to this arrangement. When the FDI only approved increases of 6% and 18% (rather than the 100% increases requested), Doze asked Union/USA for the 2001 Florida rate filing information, including all communications with the FDI.

Agreements related to the sale of the Medicare Block (the "Agreements") were signed on October 4, 2001, with closing to occur on October 15, 2001. In a conference call on October 22, 2001, Lazio mentioned for the first time that the 1999 consent order existed. In response, United Teacher once again requested the 2001 rate filing information, and on November 8, 2001, Union Labor produced it to United Teacher. On December 18, 2001, United Teacher, which by then understood the full impact of the 1999 consent order, notified Union/USA of its intent to rescind the Medicare Block transaction. By this time, the deadline for reopening the D.C. lawsuit had passed. That same day, United Teacher filed suit against Union/USA in Texas state court alleging fraud and seeking rescission of the Agreements, and it ceased its efforts at completing the transaction with Union/USA. According to United Teacher, Union/USA failed to disclose material facts about the sale of the Medicare Block during the due diligence phase. At the time of the lawsuit, Union/USA was

6

still administering the Medicare Block and was incurring losses from claims submitted by the insureds. Union/USA removed the lawsuit to federal court, United Teacher amended its complaint to request damages, and Union/USA counterclaimed for a declaratory judgment that the Agreements were valid and an order of specific performance against United Teacher. On October 22, 2002, nearly a year after it learned about the 1999 consent order, United Teacher, which was investigating a discrepancy in the Medicare Select line's lifetime loss ratios, learned for the first time of the 1997 consent order.

In September 2003, a bench trial was held on United Teacher's fraud claim and on Union/USA's declaratory judgment counterclaim. The district court subsequently issued written Findings of Fact and Conclusions of Law (the "Findings") and a Final Judgment on March 31, 2004, in which it found that United Teacher had not proven fraud. In its decision, the district court stated, inter alia, that: (1) in Texas, "for a duty of disclosure to arise there must be a confidential or fiduciary relationship between the parties"; and (2) no confidential or fiduciary relationship existed between United Teacher and Union/USA. The district court did not address Union/USA's counterclaim in its Findings. Accordingly, Union/USA filed a motion to alter or amend, in which it requested that the district court amend its judgment to address its counterclaim. On April 29, 2004, the district court amended its Final Judgment to state

that the Agreements "are valid and binding, and that [United Teacher] must perform its obligations thereunder."  Additionally, the district court awarded costs to Union/USA.  On May 26, 2004, United Teacher appealed the district court's Amended Final Judgment (Case No. 04-50531).

On May 7, 2004, Union/USA demanded that United Teacher immediately pay all amounts due and owing to Union/USA under the Agreements and take steps to consummate the transfer of the Medicare Block.[4]  According to Union/USA, the amount due and owing at that time was $8,393,660 (for insurance losses and expenses associated with the policies that United Teacher had agreed to assume).  United Teacher allegedly failed to pay the amount that it owed and failed to perform the tasks necessary to effectuate the district court's order.  Accordingly, Union/USA filed a Motion to Reopen and for Further Relief (the "motion for further relief") under 28 U.S.C. § 2202, in which it asked the district court to order payment of the money that Union/USA was owed and to again order United Teacher to perform its obligations under the Agreements.  Without issuing a written opinion or conducting a hearing, the district court summarily denied the motion for further relief.  Union/USA subsequently filed an appeal of this denial (Case No. 04-50852).  This appeal was

---

[4]    According to Union/USA, pursuant to the Agreements and retroactive to October 1, 1999, United Teacher became Union/USA's reinsurer until the policies were transferred to United Teacher.

consolidated with United Teacher's appeal.

## II.  ANALYSIS

## A.  The Existence of a Duty to Disclose

United Teacher first claims that the district court erred when it found that Union/USA had not committed fraud because it did not have a duty to disclose the consent orders to United Teacher absent a confidential or fiduciary relationship between United Teacher and Union/USA.  According to United Teacher, a duty to disclose can exist in Texas even when there is no confidential or fiduciary relationship between the parties.

United Teacher begins its argument by noting that in Texas, a plaintiff wishing to prove fraud must establish "a material representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth . . . ." Formosa Plastics Corp. v. Presidio Eng'rs. & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998) (internal quotation marks omitted).  United Teacher also notes that the Texas Supreme Court has stated that "[w]hen the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation." Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986).  United Teacher then cites Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc., 247 F.3d 574, 586 (5th Cir. 2001), for the claim that a duty to disclose can exist

9

in Texas absent a fiduciary or confidential relationship.  In

Rhone-Poulenc, this court stated:

> A duty to speak arises by operation of law when (1) a confidential or fiduciary duty relationship exists between the parties; or (2) one party learns later that his previous statement was false and misleading; or (3) one party knows that the other party is relying on a concealed fact and does not have an equal opportunity to discover the truth; or (4) one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth, i.e., all material facts, lest his partial disclosure convey a false impression.

247 F.3d at 586.  According to United Teacher, the district court should have invoked the doctrine of stare decisis and held that, in accordance with Rhone-Poulenc, Union/USA had a duty to disclose the consent orders.  United Teacher also notes that this court, as well as Texas intermediate appellate courts, have reached similar conclusions in a number of other cases, both before and after the Texas Supreme Court decided Bradford v. Vento, the case on which the district court and Union/USA rely. See, e.g., Rimade Ltd. v. Hubbard Enters., Inc., 388 F.3d 138, 143 (5th Cir. 2004); Lewis v. Bank of Am. NA, 347 F.3d 587 (5th Cir. 2003) (per curiam); Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 476-77 (Tex. App.--Fort Worth 2004); Pellegrini v. Cliffwood-Blue Moon Joint Venture, 115 S.W.3d 577, 580 (Tex. App.--Beaumont 2003, no pet.); Lesikar v. Rappeport, 33 S.W.3d 282, 299 (Tex. App.--Texarkana 2000, pet. denied); Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, pet. denied); Ralston Purina Co. v. McKendrick, 850 S.W.2ed

10

629, 635-36 (Tex. App.--San Antonio 1993, writ denied).

Accordingly, United Teacher contends that the district court, in making its "Erie guess," incorrectly stated that the holding in Rhone-Poulenc was no longer in accord with Texas state law.

Union/USA responds by arguing that in Bradford, which was decided three weeks after Rhone-Poulenc, the Supreme Court of Texas conclusively established that a duty to disclose does not exist in Texas absent a confidential or fiduciary relationship. In support of this claim, Union/USA cites the following language from Bradford:

> Several courts of appeals have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression. See, e.g., Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, no writ); Ralston Purina, 850 S.W.2d at 636. The Restatement (Second) of Torts section 551 also recognizes a general duty to disclose facts in a commercial setting. In such cases, a party does not make an affirmative misrepresentation, but what is said is misleading because other facts are not disclosed. We have never adopted section 551.

Bradford, 48 S.W.3d at 755-56 (emphasis added) (some internal citations omitted).[5] Additionally, Union/USA notes that the

---

[5] Section 551 of the RESTATEMENT (SECOND) OF TORTS (1977) states:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

11

Texas Supreme Court in <u>Bradford</u> cited its decision in <u>SmithKline</u>

<u>Beecham Corp. v. Doe</u>, 903 S.W.2d 347 (Tex. 1995), in which it

similarly stated that "Section 551 of the RESTATEMENT (SECOND) OF

TORTS recognizes a general duty to disclose facts in a commercial

setting, which could encompass the duty Doe seeks in this

case. . . . This Court has cited section 551 only once, but has

never embraced it as a rule of law in Texas."  <u>Id.</u> (citing

<u>SmithKline Beecham Corp.</u>, 903 S.W.2d at 352-53 (internal

citations omitted)).  Finally, Union/USA states that this court,

as well as Texas's intermediate appellate courts, have before and

after <u>Bradford</u> stated that no duty to disclose exists in Texas

absent a fiduciary or confidential relationship.  <u>See</u> <u>Coburn</u>

<u>Supply Co., Inc. v. Kohler Co.</u>, 342 F.3d 372 (5th Cir. 2003);

---

(2)   One party to a business transaction is under a duty to
exercise reasonable care to disclose to the other before the
transaction is consummated,
     (a) matters known to him that the other is entitled to know
     because of a fiduciary or other similar relation of trust and
     confidence between them; and
     (b) matters known to him that he knows to be necessary to
     prevent his partial or ambiguous statement of the facts from
     being misleading; and
     (c) subsequently acquired information that he knows will make
     untrue or misleading a previous representation that when made
     was true or believed to be so; and
     (d) the falsity of a representation not made with the
     expectation that it would be acted upon, if he subsequently
     learns that the other is about to act in reliance upon it in
     a transaction with him; and
(3) facts basic to the transaction, if he knows that the other is
about to enter into it under a mistake as to the them, and that the
other, because of the relationship between them, the customs of the
trade or other objective circumstances, would reasonably expect a
disclosure of those facts.

12

<u>Imperial Premium Fin., Inc. v. Khoury</u>, 129 F.3d 347, 352-53 (5th Cir. 1998); <u>Bay Colony Ltd. v. Trendmaker, Inc.</u>, 121 F.3d 998, 1004 (5th Cir. 1997); <u>Engstrom v. First Nat'l Bank of Eagle Lake</u>, 936 S.W.2d 438, 444-45 (Tex. App.--Houston [14th Dist.] 1996, writ denied); <u>Travel Music of San Antonio, Inc. v. Douglas</u>, No. 04-00-00757-CV, 2002 WL 1058527, at *4 (Tex. App.--San Antonio, May 29, 2002) (not designated for publication). Accordingly, Union/USA argues that the district court correctly concluded that because the Texas Supreme Court explicitly declined in <u>Bradford</u> to adopt the disclosure duties described in § 551 and in cases like <u>Hoggett</u>, and because the Texas Supreme Court has only explicitly recognized a duty to disclose in the context of a confidential or fiduciary relationship, a duty to disclose does not exist in Texas absent a confidential or fiduciary relationship.

After a bench trial, findings of fact are reviewed for clear error and issues of law are reviewed de novo. <u>Kona Tech. Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 601 (5th Cir. 2000). In order to determine questions of state law, federal courts look to final decisions of the state's highest court. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); <u>St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.</u>, 193 F.3d 340, 342 (5th Cir. 1999). While decisions of intermediate state appellate courts provide guidance, they are not controlling. <u>Matheny v. Glen Falls Ins. Co.</u>, 152 F.3d 348, 354 (5th Cir. 1998). If a state's highest

13

court has not ruled on the issue in question, a federal court must determine, to the best of its ability, what the highest court of the state would decide. St. Paul Marine, 193 F.3d at 342.

A reasonable jurist might well conclude, certainly after Bradford, that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship. This court has so held in Coburn, the only Fifth Circuit case that discusses the relevant portion of Bradford. However, apart from Coburn, it would be fair to say that courts after Bradford (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship. See, e.g., Rimade, 388 F.3d at 143; Lewis, 347 F.3d at 587; Citizens Nat'l Bank, 142 S.W.3d at 476-77; Pellegrini, 115 S.W.3d at 580; but see Travel Music, 2002 WL 1058527, at *4.

Fortunately, we need not decide whether a duty to disclose exists in Texas absent a confidential or fiduciary relationship because, even if such a duty did exist, United Teacher's fraud claim would fail. In Texas, fraud occurs when: (1) the defendant misrepresented a material fact; (2) the defendant knew the material representation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied

14

on the representation and thereby suffered injury.  Ernst & Young, 51 S.W.3d at 577.  The first requirement of this test can be met if the defendant concealed or failed to disclose a material fact when a duty to disclose existed.  See New Process Steel Corp., Inc. v. Steel Corp. of Texas, Inc., 703 S.W.2d 209, 214 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.); Moore & Moore Drilling Co. v. White, 345 S.W.2d 550, 555 (Tex. App.--Dallas 1961, writ ref'd n.r.e.).  Assuming, arguendo, that United Teacher has established the first prong of this test because Union/USA had a duty to disclose the consent orders, United Teacher's fraud claim nevertheless fails because it cannot prove fraudulent intent.  In its Findings of Fact and Conclusions of Law, the district court noted that Clause 3.11 of the Agreement for Reinsurance states:

> To the best of [Union Labor's] knowledge, information and belief, no warranty or representation made by the Company in this Agreement nor in any writing furnished or to be furnished by [Union Labor] to [United Teacher] pursuant hereto or in connection herewith contains or will contain any untrue statement of material fact or omits or will fail to state, any material fact necessary to make the statements contained herein or therein not misleading.

The district court interpreted this clause "as an affirmative representation that Union Labor disclosed all material information necessary to make other representations related to the sale not misleading."  The district court then analyzed whether Union/USA committed fraud by intentionally concealing or failing to disclose the consent orders during the parties'

15

negotiations, thereby misleading United Teacher.  The district

court wrote:

> a.   Omitted material information.   United Teacher
> asserts that the omitted material information was the
> existence of the consent orders and that disclosing the
> existence of the consent orders was necessary to make
> other information provided by Union Labor during
> negotiations not misleading.  There can be no doubt, and
> the Court finds, that the existence of the consent orders
> and their content was information material to United
> Teacher in analyzing the proposed purchase.   United
> Teacher offers several examples of how information
> furnished by Union Labor was rendered misleading by the
> failure to disclose the consent order.  Lazio disclosed
> to Doze that Union Labor received a 12% rate increase on
> the Florida Medicare Supplement policies on June 22,
> 1999, and an 8% increase for the Florida Medicare Select
> policies on December 16, 1999, without disclosing that
> these increases were related to the 1997 and 1999 consent
> orders.  Later, in connection with the 2001 Florida rate
> filings, Lazio advised Doze that Union Labor had received
> an 18% rate increase on the Medicare Select business and
> that the 100% request on the Supplement business was
> pending.  When Florida offered a 6% rate increase (rather
> than the 100% requested), Lazio did not inform Doze that
> the low increase was the result of the 1999 consent
> order.
>
> b.   Union Labor's knowledge and intent.  United Teacher
> alleges that Union Labor knew the consent orders were
> material and intentionally concealed them from United
> Teacher during negotiations.   As evidence of Union
> Labor's fraudulent intent, United Teacher points to Union
> Labor's insistence on performing the 2001 Florida rate
> filing, which, if performed by United Teacher, would have
> led to its discovery of the consent orders.   United
> Teacher argues that Union Labor's failure to send the
> 2001 filing information to Doze promptly after he
> requested it is further evidence of Union Labor's intent
> to conceal the consent orders.   However, Union Labor
> explained that it performed the 2001 Florida rate filing
> because it had access to the necessary information and
> that when Doze later requested the filing information, it
> was not readily available because an outside consultant
> had actually prepared the filing.   Further, Lazio, a
> young actuary with almost no experience in conducting due
> diligence for the purchase or sale of a business,

> credibly testified that she did not know that the consent orders, signed by Union Labor and the Florida Department of Insurance, would also bind United Teacher and that, since Doze did not specifically request information in the category of the consent orders, she did not think to produce them.
>
> United Teacher has presented evidence that Union Labor may have intended to conceal the consent orders, but Union Labor's explanations for its allegedly suspicious behavior are plausible. <u>United Teacher has failed in its burden of proof and persuasion</u>.

<u>United Teacher Assocs. Ins. v. Union Labor Life Ins. Co.</u>, 311 F.Supp. 2d 587, 599 (W.D. Tex. 2004) (emphasis added). United Teacher does not challenge this finding by the district court on appeal. Nevertheless, it contends that this finding is not dispositive of its claim of fraud by nondisclosure because the district court's analysis regarding intent only applied to fraud by affirmative misrepresentation. In support of this claim, United Teacher states that the intent requirement for fraud by affirmative misrepresentation does not exist with respect to fraud by nondisclosure. Specifically, United Teacher argues that it need not prove intent in order to establish fraud by nondisclosure, since intent is irrelevant when an affirmative duty to disclose exists and was violated. This is wrong. Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a

17

duty to disclose.  See, e.g., <u>Schlumberger Tech. Corp. v.</u>
<u>Swanson</u>, 959 S.W.2d 171, 181 (Tex. 1997) (holding that "fraud by
non-disclosure is simply a subcategory of fraud" requiring, e.g.,
proof of reliance); <u>Columbia/HCA Healthcare v. Cottey</u>, 72 S.W.3d
735, 744-46 & n.5 (Tex. App.--Waco 2002, no pet.) (stating intent
as an element of fraud by nondisclosure and finding sufficient
evidence of intent to support the jury's verdict); <u>Peltier</u>
<u>Enters., Inc. v. Hilton</u>, 51 S.W.3d 616, 623 (Tex. App.--Tyler
2000) (holding that fraudulent concealment "requires proof of the
same elements [as fraud by affirmative misrepresentation]").
Because the intent prong is the same in Texas for fraud by
affirmative misrepresentation as it is for fraud by nondisclosure
or concealment, the district court's finding of a lack of
fraudulent intent would apply equally if the district court had
found that a common law duty to disclose the consent orders
existed.  Accordingly, the district court's unchallenged finding
of no fraudulent intent in the nondisclosure of the consent
orders is fatal to United Teacher's fraud by nondisclosure claim,
regardless of whether or not a duty to disclose the consent
orders existed.  We therefore need not reach the question of
whether a duty to disclose can exist in Texas absent a
confidential or fiduciary relationship.[6]

---

[6]    Because the district court's finding regarding fraudulent
intent is dispositive of United Teacher's fraud claim, we need not
address Union/USA's further argument that United Teacher's fraud
claim fails because the district court found that United Teacher

**B. The Denial of Union/USA's Motion for Further Relief under 28 U.S.C. § 2202**

In its appeal, Union/USA argues that the district court erred by denying its motion for further relief under 28 U.S.C. § 2202. According to Union/USA, pursuant to the Agreements and retroactive to October 1, 1999, United Teacher became Union/USA's reinsurer with respect to the Medicare Block until the policies were transferred to United Teacher.[7]  In its motion to reopen and for

_____

failed to prove justifiable reliance.  Likewise, because United Teacher's fraud claim fails regardless of whether a duty to disclose exists in Texas absent a confidential or fiduciary relationship, we need not certify to the Texas Supreme Court the question of when a duty to disclose exists in Texas.

[7]    Section 2.1 of the Coinsurance Reinsurance Agreement (the "CRA"), which is one of the Agreements, states:

> Subject to the terms and conditions of this Agreement, effective as of the Coinsurance Effective Date, [Union/USA] hereby cedes to [United Teacher] and [United Teacher] hereby accepts reinsurance and coinsures on a one hundred percent (100%) quota share basis [Union/USA's] contractual liabilities (other than Excluded Liabilities) under the Coinsured Policies, by means of indemnity reinsurance. [Union/USA] and [United Teacher] mutually agree that, on and after the Coinsurance Effective Date, [United Teacher] shall be entitled to exercise all contractual rights and privileges of [Union/USA] under the Coinsured Policies in accordance with the terms, provisions and conditions of such Coinsured Policies. [United Teacher] agrees to be responsible for one hundred percent (100%) of the Statutory Reserves and Liabilities applicable to the Coinsured Policies (other than the Excluded Liabilities), and shall be fully responsible, at its sole expense, for administration of the Coinsured Policies in all respects in the name, and on behalf, of [Union/USA] in accordance with the terms and conditions of the Services Agreement.

CRA § 2.1.  Additionally, Section 2.1.3 of the CRA obliges United reimburse Union/USA for losses under the policies, stating:

further relief, Union/USA sought to recover in the form of a monetary award the money owed to it under the Agreements, and it also requested that the district court further order United Teacher to perform its obligations under the Agreements. Union/USA claims that it was entitled to monetary relief because the district court had previously awarded Union/USA: (1) a declaration that the Agreements are "valid and binding" and that United Teacher "must perform its obligations thereunder"; and (2) an order of specific performance as to the Agreements. Nevertheless, the district court, without a hearing or written opinion, denied Union/USA's § 2202 motion.

In support of its claim that the district court erred by denying its motion for further relief, Union/USA argues that money damages should be awarded where such relief is necessary or proper to effectuate a declaratory judgment. In support of this claim, Union/USA cites several cases from other circuits that, in Union/USA's estimation, have held that a party can effectuate a prior declaratory judgment by obtaining money damages pursuant to a motion for further relief under § 2202. Union/USA further argues that parties often obtain declaratory judgments construing their rights under agreements and then, at a later date, seek further

On and after the Coinsurance Effective Date [October 1, 1999], [United Teacher] shall bear and shall have responsibility for reimbursing (Union/USA) for all payments [Union/USA] makes of liabilities (other than Excluded Liabilities) with respect to the Coinsured Policies.

20

relief under § 2202 in the form of a monetary award or equitable relief in order to realize the full benefit of the declaratory judgment in their favor. According to Union/USA, if this ability to seek further relief under § 2202 were removed, favorable declarations of a party's rights would be a meaningless exercise. In this vein, Union/USA claims that the monetary award and injunctive relief requested in its motion for further relief was necessary to effectuate properly the declaration of the validity of the Agreements and the order of specific performance, and it argues that the district court therefore erred by denying the motion.

After a bench trial, findings of fact are reviewed for clear error and issues of law are reviewed de novo. Kona Tech. Corp., 225 F.3d at 601. If the denial of a motion for further relief under 28 U.S.C. § 2202 is based on a question of law, it is reviewed de novo. See United Nat'l Ins. Co. v. SST Fitness Corp., 309 F.3d 914, 916 (6th Cir. 2002); Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County, Ind., 57 F.3d 505, 508 (7th Cir. 1995); Ins. Servs. of Beaufort, Inc. v. Aetna Cas. and Surety Co., 966 F.2d 847, 852 (4th Cir. 1992). That said, we have held that the district court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion because 28 U.S.C. § 2201 says that a district court "may" declare the rights and other legal relations of any interested parties. See 28 U.S.C. § 2201; Am. States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995)). Likewise, because § 2202

21

says that a district court "may" award further relief, the district court's refusal to award damages under § 2202 is reviewed for an abuse of discretion. See 28 U.S.C. § 2202; Besler v. United States Dep't of Agric., 639 F.2d 453, 455 (8th Cir. 1981) (applying an abuse of discretion standard to the denial of further relief under § 2202). Finally, this court reviews a district court's ruling on the application of res judicata de novo. Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd., 99 F.3d 746, 753 (5th Cir. 1996).

Because the district court denied the motion for further relief without a hearing or written opinion, we do not know why the district court denied the motion. Accordingly, we first consider whether Union/USA's § 2202 motion was the proper type of motion to effectuate the declaratory judgment in Union/USA's favor. We then consider the possible reasons advanced by United Teacher for denying the requested relief to see if any of them could have served as the basis for the district court's decision.

We begin by addressing whether the relief requested by Union/USA was the sort of relief that the district court could provide in response to a motion for further relief under § 2202. Section 2202 states: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. This court has held that under § 2202, "the prevailing party [in a declaratory

22

judgment action] may seek further relief in the form of damages or an injunction." Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 537 (5th Cir. 1978); see also Nat'l Fire Ins. Co. of Hartford v. Bd. of Pub. Instruction of Madison County, Fla., 239 F.2d 370, 376 & n.11 (5th Cir. 1956) (citing § 2202 for the proposition that "[t]he Federal Declaratory Judgment Act contemplates that all necessary or proper relief based on the declaratory judgment should be granted"). Other circuits that have addressed the type of relief available under § 2202 have reached similar conclusions. For instance, in Besler, 639 F.2d at 455, the government prevailed on its counterclaim against a group of ranchers for a declaratory judgment that it was not estopped from recovering monies improperly paid to the ranches under a federal program. Subsequently, the government sought the monies due and, when the ranchers refused to pay, sought recovery through a § 2202 motion for further relief. As in the present case, the district court summarily denied the motion without a hearing or opinion. The Eighth Circuit held that the district court abused its discretion by summarily denying the motion, and it reversed and remanded to the district court for a determination of the amounts owed, stating that monetary relief under § 2202 was appropriate because the "declaratory judgment previously entered by the district court conclusively established the government's right to recoup the benefits received by the appellees." Besler, 639 F.2d at 455. Likewise, in Horn & Hardart Co. v. National Rail Passenger

23

<u>Corp.</u>, 843 F.2d 546, 548-49 (D.C. Cir. 1988), the D.C. Circuit affirmed the district court's award of further relief under § 2202 after one party failed to meet its obligations as set forth in the court's prior declaratory judgment. Similarly, in <u>Gant v. Grand Lodge of Texas</u>, 12 F.3d 998 (10th Cir. 1993), the plaintiff sought both coercive and declaratory relief in the original proceeding. Subsequently, the plaintiff sought further relief pursuant to § 2202 to increase the payments the plaintiff was to receive under the declaratory judgment. The Tenth Circuit affirmed the district court's decision granting the request for further relief, stating that § 2202 "permits the original judgment to be supplemented either by damages or by equitable relief even though coercive relief might have been available at the time of the declaratory action." <u>Id.</u> at 1003 (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2771, at 765-67 (2d ed. 1983)). Finally, in <u>Security Mutual Casualty Co. v. Century Casualty Co.</u>, 621 F.2d 1062, 1065-66 (10th Cir. 1980), a reinsurer filed a declaratory judgment action seeking to limit its exposure in connection with a judgment against a party insured by the primary insurer. The primary insurer filed a counterclaim, in which it requested a declaratory judgment that the reinsurer was liable to it under the terms of the reinsurance agreement. The district court found in favor of the primary insurer, issued a declaratory judgment stating that the reinsurer was liable under the terms of the reinsurance agreement, and dismissed the case.

24

Sec. Mut., 621 F.2d at 1064. Subsequently, the primary insurer moved for an amended judgment under FED. R. CIV. P. 60, requesting that the court calculate, and then award to it, monetary damages. The district court treated the motion as being made pursuant to the FED. R. CIV. P. 59(e) and denied it as untimely. The Tenth Circuit affirmed the district court's decision, but held that the primary insurer was clearly entitled to obtain money damages for the amounts owed to it under the reinsurance agreement pursuant to § 2202. See Sec. Mut., 621 F.2d at 1065-66. According to the Tenth Circuit, because the district court's declaratory judgment established the primary insurer's rights under the reinsurance agreement, monetary damages could be obtained through a motion for further relief pursuant to § 2202. See id. Thus, as is clear from these cases and from the language of § 2202, a party can file a motion for further relief requesting monetary damages under § 2202 to effectuate a prior declaratory judgment. Accordingly, Union/USA filed the right type of motion when it requested further relief under § 2202 to effectuate the declaratory judgment in its favor previously entered by the district court.

Having established that Union/USA could seek money damages through its § 2202 motion for further relief to effectuate the district court's prior declaratory judgment, we turn to United Teacher's arguments for why such relief was not justified in this case. United Teacher's primary argument is that the doctrines of res judicata and collateral estoppel preclude the further relief

25

requested by Union/USA.  This argument fails.  United Teacher's preclusion argument is based on the premise that Union/USA requested money damages below and was denied such relief.  This contention is false.  Union/USA never requested money damages in its counterclaim, nor did it request money damages at trial.  Similarly, while Union/USA's motion to alter or amend referred to the fact that United Teacher owed money to it, Union/USA did not request monetary relief against United Teacher in this motion.[8]  In support of its claim that Union/USA requested money damages at trial, United Teacher cites the following exchange between Union/USA's counsel, Mr. Christakos, and United Teacher's counsel, Mr. Ruiz:

> **Mr. Christakos:**  How much does United Teacher currently owe to Union Labor and USA Life on this transaction?
>
> **Mr. Ruiz:**  Objection, Your Honor.  I'm going to object to the relevance, because that's not in their counterclaim.
>
> **Mr. Christakos:**  It's in the counterclaim for declaration that the agreements are valid, and an order that they perform them.  I would like the most current amount owed to be in the record; it's part of that counterclaim.

While this exchange indicated to the district court that United Teacher's indebtedness to Union/USA was accruing at a rapid pace,

---

[8]     In the motion to alter or amend, Union/USA stated that it "presented evidence at trial through the testimony of Jennifer Lazio, that United Teacher owed at least $5 million as of the time of trial to [Defendants-Appellants] under the agreements at issue. [Union/USA] presented this evidence expressly in connection with [its] Counterclaim."  Union/USA did not, however, request monetary relief in this motion.

this exchange alone does not demonstrate that Union/USA requested money damages as part of its counterclaim.  In fact, no discovery has ever been conducted on Union/USA's damages, and the record indicates that prior to Union/USA's motion for further relief, no specific request for monetary relief had ever been made to the court.  United Teacher's citation to Union/USA's passing remarks about money damages at trial and in their motion to alter or amend does not change this fact.  Moreover, it would have been illogical for the district court explicitly to have ordered specific performance and held that the Agreements (which provided for monetary damages) were binding, while at the same time implicitly holding that United Teacher did not have to pay the monetary damages provided for by the Agreements.  Accordingly, because Union/USA never requested money damages before filing its motion for further relief, the doctrines of res judicata and collateral estoppel are inapplicable.[9]

United Teacher additionally claims that the district court lacked jurisdiction to grant further relief because United Teacher

_____

[9]    Other circuits have reached similar conclusions.  For instance, in Security Mutual, the Tenth Circuit held that because of the district court's declaratory judgment establishing the primary insurer's rights under the reinsurance agreement, "the closing of the case by the judgment of dismissal was clearly not a determination against the right of [the primary insurer] to recover on the reinsurance agreement."  Sec. Mut., 621 F.2d at 1066.  The court further stated that there was no "res judicata problem since the judgment did not preclude recovery of further relief by [the primary insurer] on the reinsurance treaty and [the primary insurer's] rights determined by the declaratory judgment."  Id.

27

filed its appeal of the district court's judgment before Union/USA filed its motion for further relief. This argument also fails. Courts that have addressed when a motion for further relief may be brought under § 2202 have consistently held that neither the filing of an appeal nor a lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to § 2202. See, e.g., Horn & Hadart Co. v. National Rail Passenger Corp., 843 F.2d at 548; McNally v. Am. States Ins. Co., 339 F.2d 186, 187-88 (6th Cir. 1964) (per curiam); Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g Co., 255 F.2d 518 (2d. Cir. 1958). The Supreme Court's decision in Griggs v. Provident Consumer Discount Co., 459 U.S. 59 (1982), does not undermine this conclusion. In Griggs, the Supreme Court held that "[t]he filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs, 459 U.S. at 58 (emphasis added). If we were to hold that the act of lodging an appeal of a declaratory judgment nullifies the prevailing party's right to seek further relief under § 2202, we would countermand Grigg's statement that the filing of an appeal divests the district court of its control only "over those aspects of the case involved in the appeal." See Griggs, 459 U.S. at 58; Horn & Hadart, 843 F.2d at 548 ("To rule otherwise would allow the party against whom a declaratory judgment is rendered to nullify her adversary's right

28

to § 2202 relief merely by lodging an appeal. Indeed, such a forfeiture rule would conflict not only with common sense, but also with the principle that when a party files a notice of appeal the district court only surrenders 'its control over those aspects of the case involved in the appeal.'" (quoting Griggs, 459 U.S. at 58)); see also Burford Equip. Co. v. Centennial Ins. Co., 857 F.Supp. 1499, 1502 (M.D. Ala. 1994) (holding that the reservation of jurisdiction for motions for further relief under 28 U.S.C. § 2202 is a statutory exception to the rule set forth in Griggs). Here, United Teacher's appeal concerns only the district court's judgment and award of costs pertaining to Union/USA's fraud claim. Accordingly, United Teacher's separate argument that the district court was divested of jurisdiction over Union/USA's motion for further relief under § 2202 fails.

Finally, United Teacher argues that Union/USA's motion for further relief was improper because its request for monetary damages was a compulsory counterclaim under FED. R. CIV. P. 13(a).[10]

_____

[10]     FED. R. CIV. P. 13(a) states:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction

29

This argument fails because, as Union/USA correctly states, Union/USA's request for further relief pursuant to § 2202 was not an entirely new and different claim, but instead was a request for additional relief flowing from the successful assertion of its earlier claim that the Agreements were valid and binding and should be performed. United Teacher tries to avoid this result by citing Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935 (Fed. Cir. 2003), which it says stands for the proposition that § 2202 is no exception to Rule 13(a). United Teacher's reliance on Polymer is unavailing. In Polymer, the plaintiff sued the defendant for patent infringement. The defendant subsequently began to manufacture a new, yet similar product, and it counterclaimed for a declaratory judgment that this new product did not infringe the plaintiff's patent rights. The plaintiff never asserted a counterclaim that the second product infringed its patent rights. The court found that both products violated the plaintiff's patent rights, and it awarded damages with respect to the first product. The plaintiff then filed a new case seeking damages for the infringement by the second product, arguing that § 2202 permitted it to obtain such relief. The Federal Circuit disagreed, holding that the plaintiff's claim that the second product infringed its patent rights was a compulsory counterclaim

to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

30

that should have been brought in the first action. <u>Polymer</u>, 347 F.3d at 940. <u>Polymer</u> is easily distinguishable from the present case. The plaintiff in <u>Polymer</u> never instituted a declaratory judgment claim to enforce its patent rights with respect to the second product. Accordingly, its claim that it was entitled to damages because of the infringement caused by the second product was an entirely new claim. Conversely, in the present case, Union/USA did institute, and prevail on, a declaratory judgment claim establishing the validity of the Agreements and the fact that they should be performed. Thus, Union/USA's request for further relief was not a new claim, but instead flowed from, and was consistent with, the declaratory judgment entered in its favor. Therefore, United Teacher's argument that Union/USA's request for money damages should have been brought as a compulsory counterclaim fails.

Accordingly, Union/USA's motion for further relief was properly brought under § 2202, and none of the reasons advanced by United Teacher for why it should be denied is persuasive. The declaratory judgment previously entered by the district court conclusively established the validity of the Agreements and the fact that they should be specifically performed. The district court's denial of the motion for further relief would effectively render this declaratory judgment meaningless. Because of this, because none of United Teacher's reasons for denial is valid, and because the district court did not state its reasons for denying

31

the requested relief, the district court's denial of Union/USA's motion for further relief is unsupportable. See Besler, 639 F.2d at 455 (holding that the district court abused its discretion when, without issuing a written opinion, it summarily denied a motion for further relief pursuant to § 2202). Accordingly, we find that the district court abused its discretion in denying the motion for further relief, vacate the district court's denial of the motion for further relief, and remand to the district court to conduct further proceedings to determine the relief to which Union/USA is entitled.

**C.   The Award of Costs to Union/USA**

Finally, United Teacher claims that the district court abused its discretion when, after ruling in favor of Union/USA, it awarded certain costs to it.

We review an appeal of an award of costs for an abuse of discretion. Kinnear-Weed Corp. v. Humble Oil & Ref. Co., 441 F.2d 631 (5th Cir. 1971). We have previously held that a district court has broad discretion in awarding costs, and its decision to award costs will only be reversed upon a clear showing of an abuse of discretion. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1049 (5th Cir. 1998).

Under the FEDERAL RULES OF CIVIL PROCEDURE and Supreme Court precedent, district courts may award costs, as enumerated in 28 U.S.C. § 1920, to the prevailing party. See FED. R. CIV. P. 54(d);

32

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). Costs not authorized by statute may not be awarded by the district court. Crawford Fitting Co., 482 U.S. at 441.

First, United Teacher contends that Union/USA was not entitled to any fees or costs associated with William DeCinque's attendance at trial (his fees and costs totaled $3,088.97 for the week). DeCinque was Union/USA's corporate representative at the trial and was present in the courtroom the entire week. According to United Teacher, ordinarily no fee may be taxed for someone who simply comes to the courthouse but does not testify, the presumption being that he is not a necessary witness. In support of this, United Teacher Cites two district court cases from outside of this circuit, Green Construction Co. v. Kansas Power & Light Co., 153 F.R.D. 670, 679 (D. Kan. 1994), and Wolfe v. Wolfe, 570 F. Supp. 826, 829 (D.S.C. 1983).

The district court did not err when it awarded costs for William DeCinque's attendance at trial. DeCinque attended the trial not only as Union/USA's corporate representative, but also as a witness with direct knowledge of the facts at issue. Both Union/USA and United Teacher had designated him as a witness. During the trial, United Teacher told Union/USA's counsel that it preferred to ask DeCinque questions during cross-examination (after Union/USA called him) rather than during its case in chief. On the last day of the trial, Union/USA, after consulting with the court and receiving the approval of United Teacher, decided not to call

33

DeCinque as a witness in order to complete the trial during the week of September 13, 2003. This court has held that "a court may award such a fee if the witness was ready to testify but extrinsic circumstances rendered his testimony unnecessary." Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1553 (5th Cir. 1984) (citations omitted); United States v. Lynd, 334 F.2d 13, 16 (5th Cir. 1964) (per curiam) (holding that witness fees would not be disallowed "merely because during the course of the trial a good faith determination was made, presumably in order to avoid delay, unnecessary inconvenience to the Court and parties, and other substantial expenses incident to prolonging the trial, that [the witnesses] need not be used . . . ."); see also Quy v. Air Am., Inc., 667 F.2d 1059, 1064-65 (D.C. Cir. 1981) (noting that at least one court has held that costs could be recovered "when counsel refrained from calling the witness because of a desire to avoid consuming further time"). Accordingly, the district court did not abuse its discretion in awarding costs to Union/USA for DeCinque's attendance at the trial.

Second, United Teacher claims that the district court improperly awarded costs for travel expenses incurred by DeCinque and James P. McDermott, two of Union/USA's witnesses. According to United Teacher, Union/USA failed to: (1) prove that the travel expenses for McDermott and DeCinque were the most economical rates reasonably available to them; and (2) provide receipts for McDermott's expenses (including his $911 airline expense) as

34

required by 28 U.S.C. § 1821(c)(1).  United Teacher also notes that Jennifer Lazio obtained airfare for $567.50, which, according to United Teacher, suggests that DeCinque and McDermott did not utilize the most economical rate for travel as required by 28 U.S.C. § 1821(c)(1).

With respect to the airfare costs awarded to Union/USA, the district court again did not abuse its discretion.  The relevant statute, 28 U.S.C. § 1821(c)(1), states:

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available.  A receipt or other evidence of actual cost shall be furnished.

While United Teacher attempts to show that McDermott and DeCinque did not use the most economical rate of travel because Jennifer Lazio's travel was cheaper, Union/USA correctly points out that Lazio traveled on different days from McDermott, and she flew out of Washington, D.C., while DeCinque flew out of Philadelphia. Union/USA has put forward no other evidence suggesting that McDermott and DeCinque did not use the most economical rate available.  With respect to United Teacher's argument that no receipts for McDermott's airfare were submitted, McDermott did in fact submit an invoice for his airfare that was attached to the Bill of Costs filed by Union/USA in the district court, and the

35

district court accepted this as adequate documentation.[11] Accordingly, the district court did not abuse its discretion in awarding costs for McDermott and DeCinque's air travel.

Third, United Teacher argues that the district court improperly awarded costs for photocopies to Union/USA (totaling $2,485.80). In support of this claim, United Teacher cites Holmes v. Cessna Aircraft Co., 11 F.3d 63, 64 (5th Cir. 1994) (per curiam), for the proposition that before the district court can award fees for photocopies, it must find that the copies were necessarily obtained for use in the litigation. According to United Teacher, Union/USA provided the district court with a redacted invoice that did not identify the use made of the copied materials, how many pages were copied, or the price per page. United Teacher argues that based on this, the district court could not have determined if the copies in question were necessarily obtained for use in the litigation.

The district court did not abuse its discretion with regard to the fees it awarded to Union/USA for photocopies. When it submitted its bill of costs, Union/USA provided a redacted invoice from its counsel for photocopies made during the month of September 2003, the month in which the trial was held.

---

[11] The record contains a letter dated September 26, 2003 from McDermott to Nicholas Christakos, Union/USA's counsel. The purpose of the letter was to obtain reimbursement for certain fees McDermott had incurred. Attached to the letter is a redacted spreadsheet showing, inter alia, a $911 airfare charge.

36

Additionally, Union/USA's counsel declared under penalty of perjury that the costs were correct and "necessarily incurred in this action," and it informed the court that the copying costs were for exhibit binders and other trial materials. United Teacher objected below to Union/USA's request for these costs, arguing that Union/USA had not shown that they were necessarily obtained for use in the litigation. Union/USA replied by reiterating that the photocopies in question were necessarily obtained for use in the litigation. It also stated that it was taking a conservative approach to its fee request insofar as it was requesting fees incurred for photocopies made only during the month in which the trial took place (one-fifth of the photocopying fees that it actually incurred). In its order awarding costs to Union/USA, the district court specifically noted that it had considered the request for costs, United Teacher's objections, and Union/USA's reply. It then overruled United Teacher's objections and granted Union/USA's request. The fact that Union/USA did not precisely itemize its photocopying costs does not undermine the district court's award. See Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 484 (5th Cir. 2002) (holding that when a lawyer has made the requisite declaration that photocopying costs were necessarily incurred, the court did not abuse its discretion in awarding the costs even if they were not itemized). Thus, the district court did not abuse its discretion when it awarded $2,485.80 to

37

Union/USA for photocopies incurred during the litigation.

Finally, United Teacher claims that the district court abused its discretion when it awarded subsistence allowances for four of Union/USA's witnesses (Lake, McDermott, DeCinque, and Lazio) that were greater than the maximum per diem allowance set forth in 28 U.S.C. § 1821(d)(2). According to United Teacher, the maximum allowable per diem rate for Austin, Texas is $126 per day. It contends, therefore, that, at most, Union/USA was entitled to $2,268 in subsistence costs for the eighteen days that these four witnesses attended the trial, not the $4,165.63 that was awarded to it.[12]

We find that the district court did abuse its discretion when it awarded subsistence costs to Union/USA in excess of the per diem amount authorized by statute. Section 1821(d)(2) of Title 29 of the United States Code states:

> A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

29 U.S.C. § 1821(d)(2). The record reflects that the maximum per diem amount for Austin, Texas, the city where the bench trial in the present case was held, was $126 per day at the time of trial. Additionally, Union/USA admits, and the record reflects, that the

---

[12]    Union/USA responds that it actually only claimed $3,845.63 for the subsistence of its four witnesses, not $4,165.63.

38

district court awarded costs above this per diem rate.  This court has held that an award of costs must be vacated when the costs awarded exceed the maximum per diem amount permitted by statute.  See Holmes, 11 F.3d at 64 (vacating an award of costs because the district court awarded more than the $40 per day permitted under 28 U.S.C. § 1821(b)).  Union/USA tries to get around this requirement by citing a district court case decided in 1968 in North Carolina, Morgan v. Knight, 294 F. Supp. 40, 42 (E.D.N.C. 1968), which allegedly states that costs in excess of the per diem amount may be awarded in the discretion of the district court.  This use of Morgan is misleading.  While the court in Morgan stated that some courts have awarded costs above the per diem rate, it then stated that "the better rule seems to require the court's approval before the expense is incurred[,]" and it refused to award costs in excess of the per diem rate. Id. at 42 (citing Dep't of Highways v. McWilliams Dredging Co., 10 F.R.D. 107 (W.D. La. 1950), aff'd 187 F.2d 61 (5th Cir. 1951)).  Accordingly, because the district court awarded subsistence fees in excess of the permissible amount, this award of fees, like the excessive award in Holmes, shall be vacated and remanded for the district court's recalculation in accordance with 28 U.S.C. § 1821(d)(2).[13]  Holmes, 11 F.3d at 64.

---

[13] In admitting that the district court awarded fees in excess of the per diem rate permitted by statute, Union/USA claims that it requested, and the district court awarded, the "actual costs" that its witnesses incurred for meals and lodging, rather

39

## III. CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment awarding witness subsistence fees in excess of the allowable statutory maximum and REMAND the case for recalculation of these fees in accordance with 29 U.S.C. § 1821(d)(2). We also VACATE the district court's judgment denying Union/USA's motion for further relief pursuant to 28 U.S.C. § 2202 and REMAND to the district court for further proceedings consistent with this opinion. We AFFIRM the judgment of the district court in all other respects. Costs shall be born by United Teacher.

---

than the per diem rate. 28 U.S.C. § 1821(d)(2) does not, however, permit the award of "actual costs," but limits such awards to the per diem rate. According to Union/USA, if the district court found that it was not entitled to subsistence costs above the per diem rate authorized by statute, its costs would be reduced by $1577.63. Id. The exact amount of the reduction, however, can be determined on remand by the district court. See Holmes, 11 F.3d 64 (remanding to the district court for recalculation).