In the MATTER OF: Thomas M.
GRABANSKI, Mari Kay
Grabanski, Debtors

Crop Production Services, Incorporated,
Appellee

v.

John Keeley; Dawn Keeley, Appellants

No. 16-40830

United States Court of Appeals,
Fifth Circuit.

Filed June 20, 2017

Abel Angel Leal, Sarah Lynne Stephens, Johnson Stephens & Leal, P.L.L.C., Dallas, TX, Clayton E. Bailey, Bailey Brauer, P.L.L.C., Dallas, TX, for Appellee

Stewart F. Peck, Joseph Patrick Briggett, Benjamin W. Kadden, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Appellants

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

**PER CURIAM:** *

Below, creditors of a farming business obtained a default judgment relating to unpaid invoices. Liability for the obligations recognized in the default judgment extends to the business's former partners, two of whom seek relief in this appeal. The former partners, John and Dawn Keeley, argue that the default judgment should not have been entered, should not have been extended to render them personally liable for the damages it recognized, and should have been vacated. Perceiving no abuse of discretion, we AFFIRM.

## BACKGROUND

John and Dawn Keeley, the appellants, were general partners of G&K Farms from January 1, 2008, until September 2009. G&K Farms is a North Dakota general partnership, and exists for the purpose of farming land in Texas. Thomas Grabanski, another general partner, ran G&K Farms's day-to-day operations.

Crop Production Services ("CPS"), the appellee, is an agricultural wholesaler that sold goods and services to G&K Farms. G&K Farms failed to pay CPS $642,669.55, a figure reflecting goods and services G&K Farms obtained from January to September 2009. CPS billed portions of the goods and services it provided across several different invoices. With one exception, the invoices were due on or before July 31, 2009. The exception relates to an invoice dated August 17, 2009, which became due on September 5, 2009.

On September 15-16, 2009, the Keeleys assigned their interest in G&K Farms to another general partner, Thomas Grabanski. About four years later, on July 29, 2013, Grabanski filed for bankruptcy in the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Eastern District of Texas, and G&K Farms became property of the bankruptcy estate. CPS filed a lawsuit related to G&K Farms's unpaid debt against Grabanski and John Keeley two days later in Texas state court.

In September 2013, John Keeley removed the state court case to the Eastern District of Texas's bankruptcy court. In April 2014, CPS amended its complaint, adding G&K Farms and Dawn Keeley as parties and adding various claims.[1] The Keeleys filed a joint answer in their individual capacities on May 6, 2014.

On August 13, 2014, the Keeleys moved for transfer of the case from the bankruptcy court to the district court. The district court granted that motion and took over the case on August 26, 2014. In the weeks immediately before the district court took the case from the bankruptcy court, both the bankruptcy trustee and the Keeleys filed objections in the bankruptcy court to a "proof of claim" CPS submitted. CPS's proof of claim implicated a 2008 credit application submitted to CPS by Grabanski and John Keeley on behalf of G&K Farms, and both the trustee and the Keeleys premised their objections at least in part on the argument that statute of limitations defenses existed.

CPS requested entry of default against G&K Farms on October 16, 2014, after G&K Farms failed to respond to CPS's amended complaint. CPS's request for entry of default came on the same day that CPS deposed Grabanski. During the deposition, which the Keeleys' attorney attended by telephone, Grabanski acknowledged

that he received service on behalf of G&K Farms and said he "[did] not believe" that G&K Farms intended to retain a lawyer to represent it. The Keeleys filed no objection to CPS's request for default, and the court clerk entered default against G&K Farms on October 27, 2014.

In early November 2014, CPS filed a motion for default judgment against G&K Farms. The Keeleys filed no objection to CPS's motion, and on January 8, 2015, the court entered a default judgment against G&K Farms totaling over $1.3 million.

CPS moved for partial summary judgment on April 30, 2015. In the motion, CPS argued that (1) the Keeleys were jointly and severally liable for the default judgment against G&K Farms; and (2) John Keeley was individually liable as a guarantor of G&K Farms's obligations.

While CPS's motion for partial summary judgment remained pending, the Keeleys moved to vacate the default judgment against G&K Farms. The district court denied the Keeleys' motion to vacate on July 24, 2015.

Three weeks later, on August 14, 2015, the district court issued an order granting, in part, CPS's motion for partial summary judgment. The district court found that the Keeleys are "jointly and severally liable for the entire default judgment against G&K Farms" under Texas general partnership law.[2]

CPS's claims against John Keeley moved forward in a bench trial conducted on September 22, 2015.[3] On October 14,

---

1. CPS's claims included: (1) sworn account; (2) common law action on account; (3) breach of contract; (4) quantum meruit; (5) suit on guaranty; and (6) fraud, fraudulent inducement, and fraudulent concealment.

2. The district court applied Texas law after perceiving no conflict between the general partnership law of Texas and North Dakota.

3. CPS's claims against John Keeley asserted theories of recovery distinct from the general partnership obligations on which it had already prevailed against G&K Farms. CPS

2015, the district court issued findings of fact and conclusions of law concerning those claims, which it rejected.

The district court issued a final judgment in favor of CPS against the Keeleys on October 27, 2015. On November 3, 2015, the Keeleys filed a motion relating to both the default judgment against G&K Farms and the final judgment against the Keeleys. The motion sought vacatur of the default judgment under Federal Rules of Civil Procedure 55 and 60, and sought alteration or amendment of the final judgment under Federal Rule of Civil Procedure 59. The district court denied the motion on May 12, 2016. This appeal followed.

## STANDARD OF REVIEW

This court reviews both the entry of a default judgment and the district court's refusal to set aside a default judgment "for abuse of discretion." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 495 (5th Cir. 2015) (citations omitted). "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." *Id.* (quoting *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)).

"Review of a default judgment puts competing policy interests at play. On one hand, '[this court has] adopted a policy in favor of resolving cases on their merits and against the use of default judgments.'" *Id.* at 496 (quoting *In re Chinese-Manufactured Drywall*, 742 F.3d at 594). "On the other, this policy is 'counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion.'" *Id.* (quoting *In re Chinese-Manufactured Drywall*, 742 F.3d at 594).

"The [district] court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."[4] Fed. R. Civ. P. 55(c). "To determine whether or not good cause is present, [this court] consider[s] three factors: (1) whether the default was willful; (2) whether setting aside the default judgment would prejudice [the plaintiff]; and (3) whether [the defendant] presented a meritorious defense." *In re Chinese-Manufactured Drywall*, 742 F.3d at 594 (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)). "[This court] may also consider other factors, including whether [the defendant] acted expeditiously to correct the default." *Id.* (citing *Lacy*, 227 F.3d at 292). "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." *Id.* (quoting *Lacy*, 227 F.3d at 292).

---

maintained claims against John Keeley in his alleged capacity as G&K Farms's guarantor, as well as claims alleging Keeley personally engaged in fraud against CPS.

4. Federal Rule of Civil Procedure 60(b) provides that the district court "may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

## DISCUSSION

The Keeleys assert that the district court erred by entering a default judgment against G&K Farms, by applying the default judgment in ways detrimental to them, and by declining to vacate the default judgment. We hold that the district court did not abuse its discretion in any respect.

### I. Default judgment against G&K Farms

In support of their argument that the district court erred by entering a default judgment against G&K Farms, the Keeleys emphasize the fact that they had already appeared and filed an answer before the default judgment. In the Keeleys' view, G&K Farms should benefit from their answer.

We disagree. The district court did not abuse its discretion by entering the default judgment.

The Keeleys' reliance upon *Frow v. De La Vega*, 82 U.S.(15 Wall.) 552, 21 L.Ed. 60 (1872), is misplaced. In *Frow*, a plaintiff alleged several defendants conspired to defraud him out of title to "a large tract of land in Texas." *Id.* at 552–53. One of the alleged co-conspirators defaulted and suffered the entry of a "final decree absolute against him, adjudging the title of the land to be in the [plaintiff]...." *Id.* at 553. "After this final decree," the remaining co-defendants prevailed at trial, resulting in dismissal of the plaintiff's complaint. *See id.* On appeal, *Frow* presented directly inconsistent judgments: the final decree against the defaulting defendant indicated that the plaintiff rightly held title to the land, but the remaining defendants had defeated the plaintiff's allegations that they fraudulently obtained title. *See id.* at 552–53.

This appeal presents no similar incongruity. John Keeley successfully defended himself against a distinct legal claim not advanced against G&K Farms (the guaranty claim), but his success does not establish that CPS had no other viable claims against G&K Farms. *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (per curiam) (observing that when "a defending party establishes that [the] plaintiff has no cause of action[,] th[e] defense generally inures also to the benefit of a defaulting defendant"). As the district court correctly concluded, its finding that John Keeley possessed a winning statute of limitations defense against CPS's guaranty claim does not directly conflict with the default judgment against G&K Farms.

In addition to their argument regarding *Frow*, the Keeleys invoke a Texas decision stating that "an answer for all of the individual partners is equivalent to an answer for the partnership." *See Corsicana Ready Mix v. Trinity Metroplex Div., Gen., Portland, Inc.*, 559 S.W.2d 423, 424 (Tex. App. 1977). The Keeleys cite *Corsicana* in support of their contention that because "all of the partners of G&K Farms had filed responsive pleadings," the district court erred when it deemed G&K Farms to be in default. The Keeleys did not raise this argument below, and we therefore decline to address it, in "keeping with our precedent that arguments not raised before the district court are waived and cannot be raised for the first time on appeal." *In re Deepwater Horizon*, 857 F.3d 246, 251 (5th Cir. 2017) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

### II. The default judgment's effect

Moving past the entry of default judgment against G&K Farms, the Keeleys also assert that the district court erred by "extending the effect of the de-

fault judgment" in ways adverse to them. The Keeleys claim that the district court committed two specific errors in this regard. First, they contend the district court should have revised the default judgment against G&K Farms after the bench trial of CPS's claims against John Keeley. Second, the Keeleys argue that the district court should not have given the default judgment issue-preclusive effect regarding the amount of CPS's damages.

With respect to both arguments, we perceive no abuse of discretion. As previously stated, we agree with the district court's conclusion that its findings following the bench trial did not conflict with the default judgment. John Keeley's successful statute of limitations defense against CPS's guaranty claim establishes neither that statute of limitations defenses barred CPS's other claims against G&K Farms nor that any errors exist in the default judgment's calculation of CPS's damages.

### III. Denial of motions to vacate the default judgment

Finally, the Keeleys contend the district court abused its discretion by denying their motions to vacate the default judgment. We disagree.

Below, the parties disputed whether the district court's willfulness inquiry should focus upon only the conduct of the defaulting party (i.e., G&K Farms) or also the culpability of the Keeleys' failure to object to the default. At the Keeleys' urging, the district court "examin[ed] the culpability of the Keeleys' conduct." The court found that "their failure to act was not justified."

Assuming the district court did need to consider the culpability of the Keeleys' conduct, we agree, for essentially the rea-

5. Because we would find no abuse of discretion under either analysis, we express no opinion on the question of whether the dis-

sons stated by the district court, that the Keeleys' intentional decision not to object to the default proceedings was not justified.[5] This finding of willful default "ends the inquiry." *In re Chinese-Manufactured Drywall*, 742 F.3d at 594 (quoting *Lacy*, 227 F.3d at 292). The district court did not abuse its discretion when it denied the Keeleys' motions to vacate the default judgment.

### CONCLUSION

For the reasons set forth above, we AFFIRM.

trict court could have focused exclusively on the willfulness of G&K Farms's default.