# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2022

Lyle W. Cayce
Clerk

No. 21-50097

LAURA ESCALANTE, *individually and for the benefit of all wrongful-death beneficiaries/heirs of* OMAR MILES WHITE, *Deceased*,

*Plaintiff—Appellant*,

*versus*

BRANDY LIDGE, *individually and as next friend of* Z.W.,

*Intervenor Plaintiff—Appellee*,

*versus*

CREEKSIDE LOGISTICS, L.L.C.,
*doing business as* TIMBER TRANSPORT, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-116

Before SMITH, COSTA, and WILSON, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Not often are federal courts called upon to assess marital status. Yet that is what happened here: A wrongful-death suit ended in default when a

No. 21-50097

trucking company went bankrupt. That left two plaintiffs—the two adverse parties on appeal—who both claimed to be the decedent's common-law wife. But because Texas does not allow bigamy, the district court awarded damages to just one of them.

The other putative wife maintains that, because the company defaulted, the district court had to award damages to *both* plaintiffs. We disagree: A defaulting defendant is deemed to admit a plaintiff's factual allegations, but the district court still may inquire whether those allegations demonstrate legal liability. Accepting the allegations of both plaintiffs in this case as true, the district court was right to conclude as a matter of law that only one of them can be entitled to default judgment. The judgment is affirmed.

## I.

Omar White was killed in a crash with a semi-truck in Texas. Laura Escalante, a citizen of Texas, brought a diversity wrongful-death action against Creekside Logistics, LLC, an Alabama corporation that had operated the semi. Escalante claimed that she was White's common-law wife and thus his next of kin.

Another plaintiff joined the suit as an intervenor.[1] She was Brandy Lidge, a citizen of Texas, who claimed that *she* was White's common-law wife. She sought damages both on her own behalf and on behalf of her son with White.

Bigamy is not legal in Texas, meaning that White could not have been married to both Escalante and Lidge at the time of his death. Both women thus moved for summary judgment. But the district court denied both

---

[1] An additional plaintiff also intervened and collected damages on behalf of her son with White, but her claims are not at issue here.

motions, reasoning that the existence of a common-law marriage depends on questions of fact and that there were genuine factual disputes as to which of the plaintiffs was the decedent's wife.  Escalante and Lidge then proceeded with the suit against Creekside, with each side contesting who was at fault in White's accident.

During discovery, Creekside encountered financial difficulties.  First, Creekside's liability insurer went into receivership in Nevada and stopped paying for the company's defense.  Creekside failed to retain other counsel, and so the court entered default against it.  Soon thereafter, Creekside filed for Chapter 7 bankruptcy.  After learning of that development, the district court administratively closed this case.

Eventually, Escalante received an order from the bankruptcy court stating that the proceeds of Creekside's liability insurance policy "are not part of the bankruptcy estate" and thus allowing her to proceed with the wrongful-death suit.  Lidge later received a substantially identical order.  Meanwhile, the Nevada receiver had fixed a deadline of October 31, 2020, to file all claims against the insurer.  The district court reopened this case, and the plaintiffs sought a judgment against Creekside before the receiver's deadline.

Escalante and Lidge filed independent default judgments against Creekside.  Claims on behalf of White's children went uncontradicted, but there remained the problem that Escalante and Lidge could not both have been legally married to White at the same time.  Escalante maintained that because Creekside had defaulted and could not contest the allegations against it, the court should grant *both* motions for default judgment, even though they were inconsistent.

The district court disagreed.  It denied Escalante's motion for default judgment and granted Lidge's motion in substantial part.  In addition to a

No. 21-50097

$4 million award for Lidge's son, the court granted Lidge herself $105,000 as White's widow; Escalante received nothing. The district court reasoned that while both Escalante's and Lidge's relationships with White had the hallmarks of marriage, Lidge's had existed first. In Texas, a common-law marriage can end only with a formal divorce, and Lidge and White had never obtained one. Thus, they remained married, and White's putative marriage to Escalante was void.

That order was filed on October 29, 2020, two days before the Nevada receiver's deadline. At oral argument, counsel advised that the parties had filed the judgment with the receiver along with notice that the judgment had been appealed.[2] Neither party knew the receiver's intentions or how it might respond to any judgment from this court.[3] Despite that uncertainty, Escalante appeals the denial of her motion for default judgment.

## II.

Though neither party has questioned subject-matter jurisdiction, we must assure ourselves of the authority of the federal courts to hear this case. *See, e.g.*, *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208 n.6 (5th Cir. 2016). The underlying dispute is a wrongful-death claim made by citizens of Texas against an Alabama corporation for well over $75,000. That is a textbook example of diversity jurisdiction under 28 U.S.C. § 1332. But the unusual procedural history nonetheless presents closer questions.

We first consider whether this case is barred by the domestic-relations exception to federal jurisdiction, then we address whether the parties have standing to contest this appeal. We conclude that neither concern precludes

---

[2] Oral argument at 5:10.

[3] Oral argument at 5:03, 27:43.

jurisdiction.

The domestic-relations exception to federal jurisdiction is longstanding despite having no clear basis in the Constitution or any statute. The exception was first recognized in *Barber v. Barber*, 62 U.S. (21 How.) 582 (1858). The Court concluded that federal courts *did* have jurisdiction to enforce a divorce decree, *see id.* at 599–600, but it remarked in *dictum*, without elaboration, that it "disclaim[ed] altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony," *id.* at 584.

The clearest modern elaboration of the exception came in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). The Court acknowledged that the doctrine's foundations were questionable, *see id.* at 695–97, but it nonetheless preserved the doctrine as a matter of *stare decisis*, *id.* at 703. It articulated the exception narrowly: "[T]he domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Id.* at 704. It noted that "in certain circumstances" a court might apply the exception more broadly based on "the abstention principles developed in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)." *Id.* at 705. Specifically, abstention might be appropriate where a suit presented difficult and important questions of state law and "the suit depended on a determination of the status of the parties." *Id.* at 706.[4]

---

[4] The Supreme Court appeared to broaden that understanding of the exception in *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004). That case did not require federal courts to issue a divorce, alimony, or child custody decree. But the plaintiff's standing depended on whether he had legal custody of his child, and the Court cited the domestic-relations exception to conclude that he lacked prudential standing. *See id.* at 17–18. But *Ankenbrandt*'s narrower formulation remains the more authoritative one. *Newdow* was informed by constitutional avoidance. *See id.* at 11. It also used the language of pru-

No. 21-50097

This case does not require any federal court to issue a divorce, alimony, or child custody decree. Thus, *Ankenbrandt* does not strictly deprive the federal courts of jurisdiction. And given that no party has asked us to invoke *Burford* abstention, we do not consider doing so.

We turn to the issue of standing. "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court." *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 208 (5th Cir. 1994). Appellants show standing by demonstrating that they are aggrieved by the decision of the lower court, *see id.*, and Escalante makes that showing easily. Her motion for default judgment was denied, such that she took nothing for the allegedly wrongful death of her putative husband.

Lidge's role in this appeal is less conventional. She is not the defendant, and no cross-claims were brought against her. No decision that we might issue make would make her liable to Escalante or anyone else. Still, because the funds at issue are subject to receivership, an award to Escalante will leave less money for Lidge.[5] Lidge also suggests that the receiver might refuse to honor conflicting judgments or that the judgment in this case could even implicate her Social Security benefits.[6]

Fortunately, we do not need to decide whether Lidge's stake in the outcome is sufficient to meet the requirements of standing. It is Escalante, not Lidge, who has invoked the authority of this court. Because the appellant

---

dential standing, which is now dubious. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). And a more recent domestic-relations exception case relied heavily on *Ankenbrandt* but did not mention *Newdow*. *See Marshall v. Marshall*, 547 U.S. 293, 305–08 (2006). We thus base our analysis on *Ankenbrandt* and not *Newdow*.

[5] Oral argument at 29:05.

[6] Oral argument at 15:00.

meets the elements of standing, it does not matter whether the other party does, too. *See Pers. Audio, LLC v. Elec. Frontier Found.*, 867 F.3d 1246, 1249–50 (Fed. Cir. 2017). The party opposing an appeal is not required to demonstrate standing, and that remains true even where, as here, that party was not technically "adverse" to the appellant. *See Legault v. Zambarano*, 105 F.3d 24, 26 (1st Cir. 1997). And because Escalante and Lidge are not adverse, the underlying case remains fully diverse. Odd though it is, Lidge's role in this appeal does not defeat federal-court jurisdiction.

And so it is that the federal courts have jurisdiction over this case even though it concerns a determination of marital status and even though both parties at this stage are citizens of the same state. We may now proceed to the merits.

### III.

The denial of a default judgment is reviewed for abuse of discretion. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). Factual determinations that underlie the district court's decision are reviewed for clear error. *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018). On the other hand, "[a] decision premised on an error of law constitutes an abuse of discretion." *Lake Eugenie Land Dev., Inc. v. BP Expl. & Prod.*, 785 F.3d 986, 999 (5th Cir. 2015). We have cautioned that, because of the serious consequences of default judgments, even "slight" abuses of discretion merit their reversal. *Sindhi*, 905 F.3d at 331 (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).[7]

---

[7] That vigilance exists because this court disfavors default judgments. *See, e.g.*, *Lewis*, 236 F.3d at 767; *Lacy*, 227 F.3d at 292. It is uncertain whether the same principle would lead us to reverse a slight abuse of discretion *denying* a default judgment. Because we conclude that the district court has committed no abuse of discretion, slight or otherwise, we do not address that question.

Escalante does not challenge the factual determinations underlying the denial of her motion for default judgment. Instead, she maintains that the district court based its decision on one or more legal errors. Because we review conclusions of law *de novo*, *see, e.g.*, *Suate-Orellana v. Barr*, 979 F.3d 1056, 1062 (5th Cir. 2020), this case does not require us to apply the deference normally associated with abuse-of-discretion review.

## IV.

The role of a district court in adjudicating a motion for default judgment is limited. Though the Federal Rules of Civil Procedure allow trial courts, before granting a default judgment, to "conduct hearings or make referrals" in order to "establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2), longstanding precedent circumscribes that fact-finding authority. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Thus, the district court takes as true the facts asserted by a plaintiff against a defaulting defendant. That principle is firmly established,[8] but it is not without limits. Even when a defendant is in default, a plaintiff is not "entitled to a default judgment as a matter of right." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam). Most notably, after default is entered, the court must still determine damages. *See, e.g.*, *Hughes*, 449 F.2d at 63.

There are other limitations on a defaulting defendant's implied admission. "The defendant is not held to admit facts that are not *well-pleaded* or to

---

[8] *See, e.g.*, *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)), *rev'd on other grounds* 409 U.S. 363 (1973); *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688.1 (4th ed.), Westlaw (database updated Apr. 2022).

admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. Thus, even if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted. *See Lewis*, 236 F.3d at 767–68.

And even if allegations do state a legal claim, they cannot sustain a default judgment where they "are contrary to facts of which the court will take judicial notice, or . . . are not susceptible of proof by legitimate evidence, or . . . are contrary to uncontroverted material in the file of the case." *Hughes*, 449 F.2d at 63 (quoting *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)). In some circumstances, the district court may even consider facts that are introduced into the record after the defendant defaults. *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 500 (5th Cir. 2015).

The district court concluded, based on the allegations made by Lidge, that she had married White and never divorced him. With that fact established, it followed as a matter of law that Escalante could not have been married to White and so did not have standing to recover wrongful-death benefits under the relevant statute. Escalante maintains that the district court, by questioning Escalante's marriage to White, impermissibly discounted Escalante's factual allegations that, through its default, Creekside had already admitted. But that position conflates factual allegations, which the district court was required to accept, with legal conclusions, which it was not.

The existence of a common-law marriage, like the existence of any legal relationship, is a question of law.[9] Escalante introduced allegations and

---

[9] Intermediate courts in Texas have sometimes said the opposite. *See, e.g.*, *Jenkins v. Jenkins*, 16 S.W.3d 473, 480 (Tex. App.—El Paso 2000, no pet.). But when determining state law, we are not bound by the state's intermediate courts. *See United Teacher Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 565 (5th Cir. 2005). Instead, we attempt to guess what the state's highest court would decide. *Id.* at 566. The decisions of the Texas

evidence that she had met the elements of a common-law marriage to White, and Lidge did the same. When one takes the allegations of both women as true, it follows as a matter of law that Lidge was married to White and, therefore, that Escalante could not have been.

In her amended complaint, Escalante stated that she was White's common-law wife, but she did not make specific allegations regarding any of the elements of common-law marriage. That statement was likely too "bare and conclusory" to be considered a well-pleaded factual allegation. *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1151 (5th Cir. 2021). But the district court had some discretion to consider factual showings outside the complaint, *see Wooten*, 788 F.3d at 500, and it apparently did so, a decision that is not before us. After reviewing Escalante's complaint and evidentiary showing, the district court concluded that Escalante and White had agreed to be married, had cohabited, and had held themselves out as married. Thus, the court did not reject any of Escalante's factual allegations—it merely rejected the legal conclusion that Escalante was married to White.

That rejection was proper in light of Lidge's factual allegations. In her complaint, she alleged that she and White had agreed to be married, had cohabited, and had held themselves out as married. She also alleged that her

---

Supreme Court suggest that, in line with legal intuition, it would treat the elements of a common-law marriage as questions of fact but the ultimate determination of a marriage's existence as a question of law. *See Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *cf. Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 407 (S.C. 2014); *Brandywine Paperboard Mills v. Workers' Comp. Appeal Bd.*, 751 A.2d 1205, 1207 (Pa. Commw. Ct. 2000); *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987) (en banc).

Even if that guess is mistaken, there is less doubt that, under Texas law, the voidness of a marriage is a question of law. *See, e.g.*, *Martinez v. Haas-Anderson Constr., Ltd.*, No. 13-20-00390-cv, 2022 Tex. App. LEXIS 1269, at *17 (Tex. App.—Corpus Christi Feb. 24, 2022, pet. filed). Thus, whether Escalante's and White's putative marriage was void for bigamy would have been a legal, rather than factual, conclusion.

marriage predated White's relationship with Escalante and that the marriage never ended in a formal divorce. As with Escalante, the district court credited Lidge's factual allegations. Once both plaintiffs' allegations were accepted, it followed as a matter of law that White could not have been married to Escalante. The district court could deny Escalante's motion for default judgment on the basis that, accepting all well-pleaded facts as true, those facts were legally insufficient to entitle her to relief. *See Lewis*, 236 F.3d at 767.

To be sure, before Creekside's default, Escalante did present evidence disputing Lidge's factual allegations. White's mother testified that White had not told her he was married to Lidge. An obituary for Lidge's father listed White as Lidge's fiancé, not husband. Those facts raise doubts about whether White and Lidge held themselves out as married.

But Escalante does not maintain that the district court should have rejected Lidge's claims as a factual matter.[10] And though "uncontroverted material in the file of the case" can prevent a factual allegation from being well-pleaded for purposes of default judgment, *Hughes*, 449 F.2d at 63 (quoting *Hughes*, 308 F. Supp. at 683), Lidge offered substantial evidence contradicting the claim that she and White had not held themselves out as married. The district court recognized as much when it denied Escalante's and Lidge's motions for summary judgment. There was no "uncontroverted material" that would have allowed the district court to reject Lidge's factual allegations after Creekside's default. *Id.*

Instead of faulting the district court for accepting Lidge's allegations of fact, Escalante principally complains that the court failed to accept *her*

---

[10] Escalante does state in her opening brief that "[t]he court further abused its discretion in finding that the evidence supported a finding that Lidge rather than Escalante was the common-law wife." But she does not develop that assertion, so it is forfeited. *See, e.g.*, *United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020).

well-pleaded allegations.  But Escalante fails to recognize that, accepting the factual allegations of *both* plaintiffs as true, she would not have a legal claim against Creekside.  It is unclear from the district court's opinion whether the court was accepting the allegations of both plaintiffs as true or just concluding that those allegations were true based on the factual showings.  But we review judgments, not opinions, *see, e.g.*, *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004), and the judgment can be sustained as an application of law to the facts alleged by both plaintiffs.[11]

Escalante responds that the district court, instead of considering the factual allegations of Escalante and Lidge together, should have viewed them in parallel, isolating each plaintiff's claim from the other's.  But we are aware of no authority requiring courts adjudicating default judgments willfully to blind themselves to pleadings of other parties in the same action.  And there is at least one strong reason for rejecting Escalante's approach:  In cases like this one, it would result in judgments that are logically inconsistent.

Inconsistent default judgments, like inconsistent judgments more generally, are strongly disfavored.  When a case involves multiple defendants, courts may not grant default judgment against one defendant if doing so would conflict with the position taken by another defendant.  *See, e.g.*, *GE Cap. Corp. v. Arnoult*, No. 99-2411, 2002 U.S. Dist. LEXIS 872, at *5 (E.D. La. Jan. 8, 2002).

That principle traces back to *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872), a short but influential decision.  The Court recognized that granting a default judgment against one defendant would raise the possibility that the

---

[11] Because we conclude that the district court's judgment did not depend on any factfinding, we do not address Escalante's alternative position that the court should have referred any factual disputes to a jury.

remaining defendants would show the allegations underlying that judgment were false, a result that the Court dismissed as "unseemly and absurd." *Id.* at 554. If a second defendant had remained to contest Escalante's and Lidge's wrongful-death claims, *Frow* would have precluded granting either woman a default judgment against Creekside.

None of *Frow*'s reasoning suggests that the decision would not apply to inconsistent judgments against a single defendant. This circuit has noted in an unpublished decision that *Frow* prohibits "directly inconsistent judgments." *Crop Prod. Servs. v. Keeley*, 691 F. App'x 159, 163 (5th Cir. 2017) (per curiam). Other circuits have addressed the principle at greater length, concluding that it applies "when different results as to different parties are . . . logically inconsistent or contradictory." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980). The key consideration is the assurance of "consistent verdict determinations." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (per curiam). None of that language suggests that the party at issue matters—awarding multiple plaintiffs inconsistent judgments against one defendant would be no less contradictory than would awarding a single plaintiff inconsistent judgments against multiple defendants.

At least one district court has reached a different conclusion. In *Envirogen Technologies, Inc. v. Maxim Construction Corp.*, No. 14-C-2090, 2016 U.S. Dist. LEXIS 135344 (N.D. Ill. Sept. 30, 2016), the court granted a default judgment that was inconsistent with another that had been granted previously, *id.* at *7–8. The court reasoned that, as a matter of equity, the loss caused by the default should fall on the defaulting party alone rather than on any of the plaintiffs. *Id.* at *8. But that conclusion sits in tension with *Frow* and the decisions of circuit courts, including the Seventh Circuit. Those decisions decry "different results as to different parties," not inequitable distribution of losses. *In re Uranium*, 617 F.2d at 1257.

Even if fairness were the primary concern, it is not evident that it would favor Escalante's position. Lidge maintains that granting Escalante's motion would injure Lidge by creating doubts about the enforceability of her own judgment and by reducing the assets available for her to collect. If Escalante's loss does not fall on her, it would fall not on Creekside, which is defunct, but on Creekside's other creditors. Because default often occurs when a defendant goes bankrupt, those concerns are not isolated to this case.

Moreover, where a plaintiff, but for the defendant's default, would never have been able to show legal entitlement to a judgment, denial of that judgment is not itself a miscarriage of justice. There is nothing inequitable about allowing a district court to consider the facts alleged by all plaintiffs and award default judgment to only those whose claims are not precluded. Though there may be cases in which inconsistent default judgments are unavoidable, such as where a nonresponsive defendant fails to alert the court to related actions proceeding elsewhere, *Frow* counsels strongly against accepting a rule that would encourage conflicting judgments.

In this case, one could resolve the tension between the two plaintiffs' theories just by reading them alongside each other, and we have not been presented with an argument that the district court should have engaged in further factfinding. Thus, this is not a case in which plaintiffs have presented logically irreconcilable factual allegations, nor one in which different plaintiffs have brought their claims in separate cases. We also do not foreclose the possibility that, in some circumstances, a district court would have the authority to reject even well-pleaded factual allegations of one plaintiff in order to prevent prejudice to another plaintiff.

We do reject the theory that a district court, when evaluating conflicting motions for default judgment brought by different plaintiffs, must assess those motions in isolation from one another. A court acts within its discretion

14

when it accepts the well-pleaded factual allegations of all plaintiffs and awards default judgment accordingly.

The judgment is AFFIRMED.