# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2026

Lyle W. Cayce
Clerk

———————

No. 24-11087

———————

TMX Finance Corporate Services, Incorporated,

*Plaintiff—Appellant*,

*versus*

Wendy Spicher, *in Her Official Capacity as Secretary of the Pennsylvania Department of Banking and Securities*,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-2054

———————————————————

Before Southwick, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

This is an appeal from the district court's grant of a motion to dismiss based on abstention. Starting in 2017, the Pennsylvania Department of Banking and Securities has investigated a group of TitleMax-affiliated entities. After multiple subpoenas and several years of discovery, the Department's investigation culminated in an enforcement action in the form of an order to

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

show cause (OSC) why the TitleMax entities should not pay over $52 million in monetary sanctions for entering into and enforcing loan agreements with Pennsylvania consumers in violation of Pennsylvania's usury laws.

Just weeks after the OSC issued, Appellant TMX Finance Corporate Services (TMX FCS) and its affiliates filed lawsuits in six federal district courts across the country seeking equitable relief against the state enforcement proceeding. *TitleMax of S.C., Inc. v. Spicher*, No. 24-cv-04399, 2025 WL 2378121, at *2 (D.S.C. Aug. 15, 2025) (documenting lawsuits). This appeal concerns the suit filed in the Northern District of Texas. In essence, TMX FCS claimed that the OSC was unconstitutional because, as a distinct corporate entity, TMX FCS has never engaged in lending activity and the Department has failed to allege any wrongful conduct TMX FCS has itself performed. This suit was dismissed in the district court under the *Younger* abstention doctrine. TMX FCS timely appealed, arguing the district court committed a host of errors.

We AFFIRM for the following reasons:

1. TMX FCS contends that the district court erred by failing to make a threshold determination in the abstention analysis. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (detailing the threshold requirement). TMX FCS correctly identifies that the Supreme Court, in *Sprint*, clarified that the *Younger* abstention analysis requires federal courts to determine whether a parallel state proceeding falls into one of several categories: "state criminal prosecutions, civil enforcement proceedings, [or] civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989) (*NOPSI*)). Though the district court did not rule on this question, it does not follow that we must reverse. Indeed, "we review

judgments, not opinions," and we may yet affirm if the "judgment can be sustained as an application of law to the facts alleged." *Escalante v. Lidge*, 34 F.4th 486, 494 (5th Cir. 2022). This is such a case: The OSC fits comfortably into the mold of a relevant civil enforcement proceeding. *See Sprint*, 571 U.S. at 79–81; *see also* 41 Pa. Cons. Stat. § 505; 7 Pa. Cons. Stat. § 6218. Accordingly, this initial requirement, though not explicitly determined, is satisfied.

2. TMX FCS also contends the district court erred in ruling in favor of the Commission on each of the remaining elements of *Younger* abstention. After having made the gateway determination that the state proceeding is a quasi-criminal enforcement proceeding, we must ascertain whether abstention is appropriate by considering whether: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Daves v. Dallas County*, 64 F.4th 616, 625 (5th Cir. 2023) (*en banc*) (citation and quotation marks omitted).

As to the first consideration, TMX FCS makes two arguments as to why the Pennsylvania state proceeding is not ongoing. It first contends that the Department improperly served it with process, thus failing to initiate the proceeding. That argument encounters Supreme Court precedent counseling abstention "where state criminal proceedings are begun against the federal plaintiffs [even] after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Regardless of whether the state proceeding is *properly* ongoing, it is undoubtedly ongoing at this point, with substantial investment of administrative resources and the adjudication of numerous motions; the federal case, by contrast, has not held any "proceedings of substance on the merits" but has rather been wholly

occupied with the abstention question. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436–37 (1982) (quoting *Hicks*, 422 U.S. at 349). Thus, regardless of whether service was proper under state law, TMX FCS's argument fails.

TMX FCS also argues the current suit would not interfere with the Pennsylvania enforcement proceeding because the equitable relief it seeks against the 2024 Subpoena and "further extraterritorial regulation" falls under the prospective relief exception to *Younger* abstention. For claims seeking wholly prospective relief that would not interfere with the pending enforcement proceeding, abstention is not appropriate because comity and respect for state tribunals play no significant part. *See Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988). This is not such a case. TMX FCS's claim would "unavoidably be decided against the backdrop of pending state proceedings." *Id.* at 1570. This is true because many of TMX FCS's arguments relating to the 2024 Subpoena and to the OSC mirror each other, particularly those pertaining to corporate separateness, want of personal jurisdiction, and lack of lending activity.

As to the second consideration for the propriety of abstention, TMX FCS argues that Pennsylvania has no important state interest in enforcing its usury laws here. In support, TMX FCS first contends that Pennsylvania has no interest in enforcing its usury laws in this case because it cannot have an interest in doing something it does not have jurisdiction or authority to do, *i.e.*, because Pennsylvania tribunals lack personal jurisdiction over TMX FCS and TMX FCS did not exist at the time of the subpoena. This argument would have us view state interests through too narrow an aperture. The Supreme Court has directed courts not to "look narrowly to [the state's] interest in the *outcome* of the particular case" but rather to look to "the importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 365. Certainly, states have a substantial interest in enforcing their criminal

4

laws and their analogs. *See Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018). The Pennsylvania usury laws at issue create both criminal and civil penalties. 41 Pa. Cons. Stat. § 505; 7 Pa. Cons. Stat. § 6218.

TMX FCS also asserts that the Dormant Commerce Clause outweighs Pennsylvania's interest in enforcing its state law because the federal interest in enforcing the Dormant Commerce Clause "protects all states by ensuring that no state erects the kind of barriers to trade and economic activity that threatened the survival of a fledgling country under the Articles of Confederation." *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 355–56 (4th Cir. 2005). Setting aside the question of whether TMX FCS forfeited this argument in its briefing, TMX FCS's contention does not pass muster. The most apparent error is that TMX FCS does not identify any federal interest that could plausibly override the potent federalism justifications for abstention in this case other than the now-familiar assertions that TMX FCS "could not have violated the[] provisions" of the state laws at issue and that Pennsylvania lacks personal jurisdiction over TMX FCS. Since TMX FCS does not assert that the law was facially discriminatory, it must face *Pike* balancing. *See National Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1165–66 (2023) (Sotomayor, J., concurring in part) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). *Pork Producers* demonstrates that *Pike* balancing requires more than what TMX FCS here provided. *Id.* Thus, TMX FCS's arguments fail as to this second consideration for abstention.

As to the third consideration for abstention, TMX FCS contends that the Pennsylvania rules of administrative procedure do not allow for its motion objecting to constitutional defects to be ruled on before a merits hearing is completed. This argument fails for two reasons. First, the assertion that Pennsylvania's rules of administrative procedure do not allow it to raise its objections is belied by the fact that TMX FCS filed such a motion to dismiss raising constitutional objections with the administrative

tribunal. That motion was then denied on the merits. Second, it is "sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding," as is the case here. *Ohio C.R. Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 629 (1986); 2 Pa. Cons. Stat. § 702. As a result, TMX FCS's arguments are unavailing.

AFFIRMED.